IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-003-CV





EXOCET INCORPORATED,



 APPELLANT


vs.





W. W. CORDES AND EVELYN FORD CORDES,



 APPELLEES



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 87-465, HONORABLE OLIVER S. KITZMAN, JUDGE 



 




 Exocet, Incorporated appeals from a permanent injunction obtained by W. W. and
Evelyn Ford Cordes following a jury trial. We will affirm the judgment.



THE CONTROVERSY


 Exocet owned a final judgment rendered against W. W. Cordes in a district court
of Dallas County. After recording in Fayette County an abstract of its judgment, Exocet obtained
a writ of execution ordering the sheriff of that county to sell two parcels of land owned by the
Cordeses. W. W. Cordes sued to enjoin the sheriff from conducting the sale. The trial court, by
restraining order and temporary injunction, preserved the status quo until the time of trial.

 Exocet counterclaimed for judicial foreclosure of its judgment lien, naming both
Cordeses as defendants. Evelyn Ford Cordes appeared by an original answer wherein W. W.
Cordes joined her.

 The cause proceeded to trial on the Cordeses' claim that the property was their
homestead and, thus, exempt from execution or forced sale, and on Exocet's claim that the
Cordeses had abandoned the homestead, if the property had ever been a homestead. The jury
found the property was the Cordeses' homestead and declined to find they had abandoned it. The
trial court rendered judgment on the verdict, restraining Exocet and the Sheriff from any further
attempt to sell the property. Exocet appealed.



DISCUSSION AND HOLDINGS



I.


 Before trial, Exocet served upon the Cordeses requests for admissions. One request
asked them to admit the following:  "The lien which was perfected by the filing of the abstract of
the Judgment is a first and preferred lien on the interests of Wilbur Wright Cordes and Evelyn
Ford Cordes in the 55 Acres . . . ." (Emphasis added.) The Cordeses admitted the proposition.

 Exocet contends the Cordeses' judicial admission established, as a matter of law,
that the property was not their homestead. Exocet's contention rests on the following theory: the
homestead character of real property precludes the attachment of a judgment lien to the property,
Harms v. Ehlers, 179 S.W.2d 582, 583 (Tex. Civ. App. 1944, writ ref'd); therefore, the
Cordeses necessarily conceded the property was not their homestead when they judicially admitted
that Exocet had "perfected" its lien against the property. 

 The relevant statutes refute Exocet's theory. When an abstract of judgment is
recorded and indexed in accordance with chapter 52 of the Property Code, it "constitutes a lien
on the real property of the defendant located in the county . . ., including real property acquired
after such recording and indexing." Tex. Prop. Code Ann. § 52.001 (Supp. 1991). Homestead
property is not excluded from the scope and effect of this statute prescribing the legal consequence
of perfecting a judgment lien by recording and indexing an abstract of the judgment. Section
41.001 of the Property Code provides, however, that a "homestead" is "exempt from seizure for
the claims of creditors except for encumbrances properly fixed on homestead property."

 Under these statutory provisions, a judgment lien is "perfected," or brought into
existence against a debtor's property, by recording and indexing an abstract of the judgment in
the county where the property lies. The debtor's homestead is not exempt from the perfected lien;
rather, the homestead is exempt from any seizure attempting to enforce the perfected lien. This
is all that the language in Ehlers means. Moreover, we may not construe a party's statement to
be a judicial admission when it is obviously not intended to negate the very basis of his cause of
action. Gregory v. Texas Emp. Ins. Ass'n, 530 S.W.2d 105, 108 (Tex. 1975).

 We hold accordingly and overrule the point of error.



II.


 Before trial, Exocet served upon the Cordeses written interrogatories. One
required them to state the names, addresses, and telephone numbers "of any person who you
intend to call as a witness in the trial of this cause." The Cordeses did not object to the
interrogatory; rather they supplied the requested information by listing the names, addresses, and
telephone numbers of 28 individuals. The Cordeses were not required to answer the interrogatory
at all, because it inquired concerning persons they intended to call as witnesses rather than
persons having knowledge of relevant facts. Gutierrez v. Dallas Independent School Dist., 729
S.W.2d 691, 693 (Tex. 1987); Employers Mut. Liability Ins. Co. of Wis. v. Butler, 511 S.W.2d
323, 324-25 (Tex. Civ. App. 1974, writ ref'd n.r.e.). While the Cordeses supplied the
information relative to the 28 individuals, without objection, they did not list themselves as
persons they "intend to call as a witness in the trial of this cause."

 Thereafter but before trial, Exocet moved for an order in limine excluding any
witness not named on the Cordeses' list of 28 individuals, citing Boothe v. Hausler, 766 S.W.2d
788 (Tex. 1989), and Farah Mfg. Co., Inc. v. Alvarado, 763 S.W.2d 529 (Tex. App. 1988),
aff'd, 34 Tex. S. Ct. J. 107 (November 21, 1990), each of which involved non-party, non-expert
witnesses. The trial court granted the motion. The court also granted that part of the motion in
limine wherein Exocet urged the court to admit at trial certain evidence that would "impeach W.
W. Cordes' [sic] credibility."

 After the jury were sworn, but before testimony began, Exocet objected to the
Cordeses' giving testimony in the trial, on the grounds that they had not supplemented their
answers to interrogatories by naming themselves as persons to be called and the trial court had
"granted" Exocet's motion in limine to exclude any witness not on the list of 28 individuals. 
Accordingly, Exocet stated, "[w]e have assumed, and prepared our case under the assumption that
[the Cordeses] were not to be called at trial." The Cordeses rejoined by stating they "expected
to be witnesses on their own behalf in the case," even though they failed to include themselves
on the list of witnesses furnished in response to Exocet's interrogatory.

 The trial court ruled that the Cordeses might testify in the case, stating the court
had "considered the pleadings and the circumstances here, and the fact that there are significant
filings in this case," referring to the numerous interrogatories answered by the Cordeses and to
the fact that the transcripts of their depositions had been on file in the case for about eight months
before trial. The court admonished the Cordeses' counsel for not listing them, but concluded
"there can really be no surprise to the defense, and . . . any injury by the failure to list the parties
as witnesses . . . would be minimal." In its second point of error, Exocet contends the trial court
abused its discretion by allowing the Cordeses to testify.

 Exocet's argument seeks to bring the case within Tex. R. Civ. P. Ann. 166b(6)(a)
(Supp. 1991), and the automatic-exclusion doctrine of Hausler, Gutierrez, and Morrow v. H.E.B.,
Inc., 714 S.W.2d 297 (Tex. 1986). Under that doctrine, an appellate court may set aside the trial
court's good-cause determination only if the appellate court finds the trial court abused its
discretion by deciding the issue of good cause without reference to any guiding rules and
principles. In the present case, it appears that the guiding rules and principles are these: (1) the
requirements of Rule 166b(6)(a); and (2) the purposes which underlie Rule 166b.

 Rule 166b(6)(a) places upon a party the duty to supplement his response to
discovery requests "if he obtains information upon the basis of which: (1) he knows that the
response was incorrect or incomplete when made; 2) he knows that the response though correct
and complete when made is no longer true and complete and the circumstances are such that
failure to amend the answer is in substance misleading; . . . ."

 The purposes behind Rule 166b and the sanctions available for discovery abuse are
"to encourage full discovery of the issues and facts prior to trial," in order that the parties may
"make realistic assessments of their respective positions," thereby facilitating settlements and
preventing unfair surprise. Rainbo Baking Co. v. Stafford, 787 S.W.2d 41, 42 (Tex. 1990). The
aims of the sanctions are: (1) deterring future violations of the discovery rules; (2) ensuring that
a violator does not profit by his wrong and that his adversary does not suffer by the wrong;
(3) protecting innocent parties from unreasonable expense and burdens resulting from discovery
misuse; and (4) preventing needless delay and consumption of court time. Kilgarlin & Jackson,
Sanctions for Discovery Abuse under New Rule 215, 15 St. Mary's L. J. 767, 774-75 (1984);
Longley & Kincaid, Discovery and Sanctions for Discovery Abuse, 18 St. Mary's L. J. 163, 188-92 (1986).

 We cannot conclude the trial court acted without reference to the guiding rules and
principles in its implied determination that good cause existed for the Cordeses' failure to include
themselves in the list of witnesses they intended to call and for allowing them to testify. The
"pleadings and circumstances" to which the court referred permitted the court reasonably to
conclude that a duty to supplement never arose under Rule 166b(6)(a). 

 Under Rule 166b(6)(a)(1), the duty to supplement arose only when the Cordeses
acquired information from which they knew their response was incomplete when made. The
record reveals no such information apart from the knowledge imparted by the text of the
interrogatory itself. In a strict and isolated sense, the interrogatory included the Cordeses within
the scope of the expression "any person who you intend to call as a witness." It was not
unnatural, however, to understand the expression in context as being a reference simply to persons
other than the Cordeses. For example, it is somewhat of an abstraction for one to "call" himself
as a witness, and Tex. R. Civ. P. Ann. 181 (1976) always permits a party to "examine the
opposing party as a witness," and compel his attendance at trial. See E-Z Mart Stores, Inc. v.
Terry, 794 S.W.2d 63, 65 (Tex. App. 1990, writ denied) (individual designated to be corporate
representative for trial became a "party" and was entitled to testify even though he had not been
identified before trial, in response to interrogatory, as person with knowledge of relevant facts).

 Moreover, the discovery rules authorized, and Exocet employed, vigorous pretrial
discovery directed at the Cordeses, implying that Exocet believed the Cordeses would testify at
trial. From the Cordeses' uncontradicted statement that they had always intended to testify,
judged in light of the pleadings and the other circumstances mentioned above, we believe the trial
court could reasonably have concluded that the Cordeses did not know that the interrogatory
required them to list themselves as witnesses if they intended to "call" themselves; that is to say,
the court could reasonably have concluded that they did not know that their response to the
interrogatory was "incomplete when made."

 Rule 166b(6)(a)(2) imposed a duty on the Cordeses to supplement their answer if
they knew that their original response, while correct and complete when made, was "no longer
true and complete and the circumstances are such that failure to amend the answer is in substance
misleading." If the Cordeses ever should have believed the interrogatory required them to list
themselves as persons they intended to call as witnesses, that belief was contradicted by Exocet's
motion in limine. In that motion, Exocet moved to exclude any witness not named on the list
furnished by the Cordeses, and cited in support of its request judicial decisions that dealt
exclusively with non-party witnesses; moreover, Exocet moved therein that it be allowed to
introduce evidence, extraneous of the homestead and abandonment issues, on the ground that such
evidence had the purpose of impeaching W. W. Cordes's "credibility." The foregoing implied
that Exocet expected the Cordeses to testify and did not intend by its interrogatory that they should
list themselves as witnesses. Moreover, the foregoing factors support a reasonable inference by
the trial court that the Cordeses' failure to name themselves could not be misleading to Exocet,
as Rule 166b(6)(a)(2) required before a duty arose in the Cordeses to supplement their answer to
the interrogatory.

 Finally, we believe the trial court could reasonably have concluded from the
pleadings and circumstances that the purposes of Rules 166b and 215 were not invoked when
Exocet waited until the moment trial began before it objected to the Cordeses' testifying in the
case, or that those purposes were so slightly involved as to justify only the admonition which the
court gave to the Cordeses' counsel.

 For the reasons given, we cannot conclude that the trial court abused its discretion
in the sense of acting without reference to any guiding rules and principles. We therefore overrule
the point of error.



III.


 In a third point of error, Exocet complains there was no evidence or factually
insufficient evidence to support the jury's verdict, and that it was against the "overwhelming
and/or great weight of the evidence." In its argument, Exocet appears to challenge both the jury's
finding that the property was the Cordeses' homestead and the jury's failure to find that the
Cordeses had abandoned their homestead.

 Concerning the jury's finding that the property was the Cordeses' homestead, the
jury could reasonably have found as it did based on the evidence. Exocet argues from those parts
of the evidence which would have justified the jury's failure to find the property was a homestead,
but this does not mean that the jury were unreasonable in finding as they did based on the
evidence that showed the Cordeses' use and occupation of the property as a home with the
requisite intention. W. W. Cordes testified he intended the property to be his homestead; he had
taken the homestead exemption on it since 1982; and he had lived there since 1977. Evelyn Ford
Cordes testified to the same effect. Other witnesses testified about the Cordeses' actual
occupation of the property as a home since 1977, except for a period when W. W. Cordes was
serving a penitentiary sentence.

 Concerning the jury's failure to find that the Cordeses had abandoned the
homestead, we note that Exocet bore the burden of proof on that issue. The substance of Exocet's
contention must therefore be that the nature and quality of its evidence compelled the jury, in
justice, to infer the elements of Exocet's claim. 4 McDonald, Texas Civil Practice § 18.14, at
318 (rev. ed. 1984). If we assume the jury reasonably could have found abandonment from the
evidence, we may not set aside their refusal to do so unless we may also say from the record that
their refusal was "clearly the product of something other than reason." Garwood, The Question
of Insufficient Evidence on Appeal, 30 Texas L. Rev. 803, 813 (1952). Exocet points to various
factors shown in the evidence: the Cordeses' unsuccessful attempt to give the property to their
daughter; their lease of the property before 1975; occasional use of the home by W. W. Cordes's
parents on weekends; W. W. Cordes's absence from the home during his prison sentence; low
electric-power usage for certain periods; and other particulars. We find nothing in this which
implies that the jury's refusal to find must "have been actuated by prejudice, sympathy or other
incorrect motive . . . ." Id. at 811-13. We may not, therefore, substitute our own inferences for
those upon which the jury apparently acted in declining to find the Cordeses had abandoned their
homestead.

 We overrule the third point of error.



IV.


 Exocet complains next that the trial court erred in refusing to submit to the jury
four special instructions requested by Exocet. Copies of the requested instructions are attached
to Exocet's brief, wherein Exocet explains their absence from the appellate transcript: (1) Exocet
submitted the original documents to the trial court during the "charge conference"; (2) the court
refused to submit the four instructions, and marked on each the word "refused"; (3) the four
requests, along with 14 other requests for instructions to be included in the charge, then
"disappeared and cannot be found"; and (4) Exocet "specifically requested the clerk to include
those issues [sic] in the transcript." The balance of Exocet's complaint argues that refusal of the
requested instructions amounted to reversible error.

 In a final point of error, Exocet assigns as reversible error the trial court's "losing
all 18 of" the special instructions Exocet requested.

 Texas R. App. P. Ann. 50 (Pamph. 1991) provides:



(e) Lost or Destroyed Record. When the record or any portion thereof is lost
or destroyed it may be substituted in the trial court and when so substituted
the record may be prepared and transmitted to the appellate court as in
other cases. If the appellant has made a timely request for a statement of
facts, but the court reporter's notes and records have been lost or destroyed
without appellant's fault, the appellant is entitled to a new trial unless the
parties agree on a statement of facts.



(Emphasis added.) Section (a) of the rule provides, "[t]he record on appeal shall consist of a
transcript and, where necessary to the appeal, a statement of facts." Section (d) declares, "[t]he
burden is on the appellant, or other party seeking review, to see that a sufficient record is
presented to show error requiring reversal."

 Exocet's brief asserts that the requested instructions were handed to the trial court,
"then disappeared and cannot be found." Rule 50(e) provided a mechanism for Exocet to
substitute in the trial court the requested special instructions now attached to its brief, so that a
sufficient record demonstrating error might be presented to this Court for review. There is no
provision for this Court to evaluate and determine assignments of error based on such matters
outside "[t]he record on appeal," which consists exclusively "of a transcript and, where necessary
to the appeal, a statement of facts." See Tex. R. App. P. Ann. 50(a).

 Accordingly, we hold we may not pass on Exocet's two final points of error, both
of which depend on matters outside the appellate record. Sabine Offshore Service, Inc. v. City
of Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979); Morris v. Porter, 393 S.W.2d 385, 391 (Tex.
Civ. App. 1965, writ ref'd n.r.e.).

 Finding no error as assigned, we affirm the trial-court judgment.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and Kidd]

Affirmed

Filed: August 28, 1991

[Publish]