

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

November 20, 1995

Mr. Kenneth H. Ashworth
Commissioner
Texas Higher Education Coordinating Board
P.O. Box 12788
Austin, Texas 78711-2788

Opinion No. DM-366

Re: Whether a duly recorded abstract of a valid, nondormant, and undischarged judgment may constitute (1) a cloud on the judgment debtor's title to homestead property located in the county where the abstract is recorded and (2) a slander of the judgment debtor's homestead title (RQ-784)

Dear Mr. Ashworth:

You have asked us whether the Texas Higher Education Coordinating Board must issue a partial release of a student loan judgment lien on real property that a judgment debtor claims as homestead. You cite the case of *Tarrant Bank v. Miller*, 833 S.W.2d 666 (Tex. App.--Eastland 1992, writ denied), as cause for your concern that a judgment lien that is not partially released as to the debtor's claimed homestead may cast a cloud on the debtor's title and that a judgment creditor's refusal to release the lien as to the claimed homestead may constitute a slander of the debtor's title. We therefore understand you to ask whether a duly recorded abstract of a valid, nondormant, and undischarged judgment may constitute (1) a cloud on the judgment debtor's title to homestead property located in the county where the abstract is recorded and (2) a slander of the judgment debtor's homestead title. Before turning our attention to the *Tarrant Bank* case, we will review the nature of the judgment lien and the effect it has on a homestead.

The judgment lien is a creature of statute. *City State Bank v. Bailey*, 214 S.W.2d 901, 903 (Tex. Civ. App.--Amarillo 1948, writ ref'd). Section 52.001 of the Property Code establishes the lien as follows:

> Except as provided by Section 52.0011, [which deals with the establishment of a judgment lien pending appeal,] a first or subsequent abstract of judgment, when it is recorded and indexed in accordance with this chapter, if the judgment is not then dormant, constitutes a lien on the real property of the defendant located in the county in which the abstract is recorded and indexed, including real property acquired after such recording and indexing.

*See also* Prop. Code § 52.003 (abstract must show names of parties; defendant's birth date and driver's license number if available; case docket number under which judgment was rendered; defendant's address if shown in suit, or nature of citation and date and place of service; date of rendition of judgment; amount for which judgment was rendered and balance due; amount of balance due for child support arrearage; and judgment interest rate).

The homestead is protected by constitutional and statutory provisions. Section 50 of article XVI of the Texas Constitution protects the homestead from forced sale for the payment of any debt other than for purchase money, taxes on the homestead, or labor and materials used in improving the homestead. Section 50 also makes void any contractual lien against the homestead other than for purchase money or home improvements. If the election held on November 7, 1995, results in the adoption of the Seventy-fourth Legislature's Senate Joint Resolution No. 46 (which result appears probable[1]), section 50 will be amended to add to the kinds of debts for which forced sale and valid liens are permitted (1) an owelty of partition resulting from a division or award of the homestead in a divorce proceeding and (2) refinancing of a lien against the homestead. *See* S.J. Res. 46, 74th Leg., R.S., 1995 Tex. Sess. Law Serv. pamphlet 8, at A-10. Section 41.001 of the Property Code is the statutory counterpart to article XVI, section 50. *See* Prop. Code § 41.001, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 121, art. 1, 1995 Tex. Sess. Law Serv. 933.

The courts of this state have held that "a judgment, though duly abstracted, never fixes a lien on the homestead so long as it remains a homestead." *Hoffman v. Love*, 494 S.W.2d 591, 593-94 (Tex. Civ. App.--Dallas), *writ ref'd n.r.e. per curiam*, 499 S.W.2d 295 (Tex. 1973); *accord Englander Co. v. Kennedy*, 424 S.W.2d 305, 309 (Tex. Civ. App.--Dallas), *writ ref'd n.r.e. per curiam*, 428 S.W.2d 806 (Tex. 1968); *Anderson v. Bundick*, 245 S.W.2d 318, 322-23 (Tex. Civ. App.--Eastland 1951, writ ref'd n.r.e.); *Commercial Sec. Co. v. Thompson*, 239 S.W.2d 911, 915 (Tex. Civ. App.--Fort Worth 1951, no writ); *Harms v. Ehlers*, 179 S.W.2d 582, 583 (Tex. Civ. App.--Austin 1944, writ ref'd); *Hughes v. Groshart*, 150 S.W.2d 827, 829 (Tex. Civ. App.--Amarillo 1941, no writ).[2] Rather, "a recorded judgment hangs over the defendant, and by virtue of it a lien attaches to all his real property, in the county where the judgment is recorded, which he

---

[1] The *Austin American-Statesman* reported on November 8, 1995, that with ninety-eight percent of the precincts reporting, the vote was 363,363 for and 343,473 against the proposed amendment. *Amendment Results*, AUSTIN AM.-STATESMAN, Nov. 8. 1995, at A11.

[2] The contrary proposition is found in *Exocet Inc. v. Cordes*, 815 S.W.2d 350 (Tex. App.--Austin 1991, no writ): "The debtor's homestead is not exempt from the perfected [judgment] lien; rather, the homestead is exempt from any seizure attempting *to enforce* the perfected lien." *Id.* at 352. This analysis in *Exocet Inc.* has been criticized as being "untenable constitutionally and precedentially." Joseph W. McKnight, *Family Law: Husband and Wife*, 45 Sw. L.J. 1831, 1852 (1992) (footnotes omitted).

owns at the time the judgment is recorded, or acquires thereafter, and which is subject to execution, or becomes subject to execution during the life of the judgment record." *Marks v. Bell*, 31 S.W. 699, 702 (Tex. Civ. App. 1895, writ ref'd); *accord Lewis v. Brown*, 321 S.W.2d 313, 317 (Tex. Civ. App.--Fort Worth 1959, writ ref'd n.r.e.); *Walton v. Stinson*, 140 S.W.2d 497, 499 (Tex. Civ. App.--Dallas 1940, writ ref'd) ("A duly recorded judgment lien against the owner of land which is exempt will, however, attach to the property when it ceases to be a homestead, if, at such time, it is still owned by the judgment debtor.").

A judgment lien that is perfected while the property is a homestead is not void and so is unlike an attempted non-purchase-money, nonimprovement contractual lien, which is void and never attaches even after debtor abandons the property as homestead. *See Harrison v. First Nat'l Bank*, 224 S.W. 269, 276 (Tex. Civ. App.--Fort Worth 1920, no writ) (on motion for rehearing) (judgment lien does not fall within provision of section 50 of article XVI that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon."). "The [judgment] lien is created when the property becomes subject to it, and not until then, and hence is not affected by any homestead right. The lien arises as it would if the record were made on the day of abandonment of homestead." *Glasscock v. Stringer*, 33 S.W. 677, 678 (Tex. Civ. App. 1895, writ ref'd).

Thus, a judgment lien may attach to the debtor's property either before the property becomes a homestead or when the property ceases to be a homestead. A judgment lien that exists before the property's subsequent impression with a homestead is not affected by the establishment of the homestead; the homestead interest is subject to the pre-existing lien. *See Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Johnson v. Prosper State Bank*, 125 S.W.2d 707, 711 (Tex. Civ. App.-- Dallas 1939), *aff'd*, 138 S.W.2d 1117 (Tex. 1940).

Additionally, a judgment debtor may transfer the debtor's homestead to another person free of any judgment liens that were perfected after the property became impressed with the homestead interest, and the purchaser has good title as against such creditors. *Gill v. Quinn*, 613 S.W.2d 324, 325 (Tex. Civ. App.--Eastland 1981, no writ). The proceeds of a voluntary sale of a homestead are statutorily exempt from seizure by creditors for six months after the date of the sale. Prop. Code § 41.001(c). This six-month grace period was enacted to permit the seller a reasonable opportunity to use the proceeds to purchase a new homestead without jeopardy. *Taylor v. Mosty Bros. Nursery, Inc.*, 777 S.W.2d 568, 570 (Tex. App.--San Antonio 1989, no writ). The legislature intended the statutory exemption of homestead sale proceeds to protect only the right to acquire a new homestead, not to protect the proceeds themselves. *Gaddy v. First Nat'l Bank*, 283 S.W. 277 280 (Tex. Civ. App.--Beaumont 1926, no writ). Therefore, the exemption terminates upon the debtor's acquisition of a new homestead or at the end of six months, whichever occurs first. *England v. Federal Deposit Ins. Corp. (In re England)*, 975 F.2d 1168, 1175 (5th Cir. 1992).

The court in *Tarrant Bank v. Miller* held that although a duly recorded and indexed abstract of judgment does not operate on an existing homestead, it may cast a cloud on the debtor's title to the homestead. 833 S.W.2d at 667. A cloud on title is "'[a]n outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and on its face has the effect, but can be shown by extrinsic proof to be invalid or inapplicable to the estate in question.'" *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex. Civ. App.–Corpus Christi 1968, writ dism'd) (quoting BLACK'S LAW DICTIONARY 322 (4th ed. 1951)). Such a cloud results from two factors: (1) the recording and indexing of the abstract and (2) the lack of a conclusive determination that the debtor's property is homestead.

To have the cloud of an abstract of judgment removed, a plaintiff must plead and prove at least a reasonable apprehension of injury caused by the cloud. *See* 61 TEX. JUR. 3D *Quieting Title and Determining Adverse Claims* § 9 (1988). "The alleged cloud must be capable of endangering the owner's title or impeding its free and unencumbered alienation." *Id.* § 12 (footnote omitted). Therefore, no suit to remove the cloud of an abstract of judgment will lie in the absence of the judgment creditor's seizure of the property or the judgment debtor's attempt to sell the property, which attempt was thwarted by the abstract of judgment. *See Mauro v. Lavlies*, 386 S.W.2d 825, 826-27 (Tex. Civ. App.–Beaumont 1964, no writ).

A cloud on title does not necessarily give rise to a cause of action for slander of title. A plaintiff in an action for slander of title must plead and prove that the defendant uttered and published false and malicious words in disparagement of some interest the plaintiff had in property and that the plaintiff suffered special damages as a result. *Stovall v. Texas Co.*, 262 S.W. 152, 153 (Tex. Civ. App.–Fort Worth 1924, writ ref'd).[3] Falsity, therefore, is an element of the plaintiff's case: "'The statement claimed as slanderous must be false. If there be such a flaw in the title as the defendant asserted, no action lies. And it is for the plaintiff to prove it false, not for the defendant to prove it true.'" *Fant v. Sullivan*, 152 S.W. 515, 523 (Tex. Civ. App.–San Antonio 1912, writ ref'd) (quoting MARTIN L. NEWELL, THE LAW OF DEFAMATION, LIBEL & SLANDER IN CIVIL AND CRIMINAL CASES AS ADMINISTERED IN THE COURTS OF THE UNITED STATES OF AMERICA § 8, at 208 (1890)).

Even without any further action by the judgment creditor, the judgment debtor's homestead frequently becomes unmarketable because of the filing of an abstract of judgment and the unascertained homestead status of the property:

> While homestead property will pass free and clear of such judgments,
> the homestead status is not readily determinable by the deed records.

---

[3]Regarding special damages, the plaintiff must plead and prove the loss of a specific sale of the property resulting from the disparagement. *E.g., A. H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982).

> The buyer must often rely solely on the homeowner's assurances that
> the property is homestead.
>
> Assuming that the homestead status is, at some point in time,
> established, this status may terminate before the homestead owner
> conveys the property and at that time the judgment lien will
> immediately attach. Most buyers are not willing to purchase land in
> which the seller's title is uncertain. This has the undesirable effect of
> rendering the title to his homestead unmarketable.

Suzanne M. Schwarz, Comment, *Judgment Liens and the Texas Homestead*, 40 BAYLOR
L. REV. 641, 643 (1988).

*Tarrant Bank v. Miller* provides an example of the adverse effect an abstract of
judgment has on the marketability of a homestead. In that case, the Millers lost a sale of
their homestead when the title company refused to issue title insurance without Tarrant
Bank's partial release of its judgment lien as to the homestead[4] and the bank refused to
execute the partial release. 833 S.W.2d at 667. The trial court had awarded damages for
slander of title, rendered a declaratory judgment that the bank's judgment lien was not
enforceable against the debtors' homestead, and awarded attorney fees. *Id.*[5] The bank

---

[4]The court of appeals in *Mauro v. Lavlies*, 386 S.W.2d 825, 827 (Tex. Civ. App.–Beaumont
1964, no writ), noted that "[i]t is doubtful that a title company would issue title insurance upon a piece of
property where a judgment had been abstracted." A brief submitted to our office in this matter explains
why title companies will not issue insurance in such a situation:

> [T]he premiums for . . . [a] title policy of insurance usually cost in the hundreds
> of dollars. . . . The title company will not risk issuing a policy with . . . [a
> judgment] lien of record. The potential threat of litigation and associated cost
> whether successful or not far exceeds the premium received. It is not cost
> effective. The basic reason is that if litigation ensues, and of course it would be
> against the title company, the issue of homestead status is an issue of fact. The
> title company must necessarily depend on the cooperation and testimony of the
> home owner or the family and they could be dead or otherwise be unavailable.

Letter from John A. Daniels, Esq., Daniels & Daniels, Attorneys at Law, San Antonio, Texas
(Apr. 7, 1995) (on file with this office).

[5]The opinion does not indicate whether the declaration in the judgment (1) merely established
that the bank had no enforceable lien at the time of judgment (based on the property's then-existing status
as a homestead) or (2) flatly declared that the lien was unenforceable. Although this concern was not
raised in *Tarrant Bank*, we believe that it would be improper for a court to declare, in effect, that a
homestead is free of a potential future judgment lien based on an already duly recorded abstract of
judgment. "Since a homestead loses its protective status if abandoned, and the owner may abandon at any
time prior to the time of the sale, the court should not render a judgment that the land is free of the
judgment lien but only that it is free of the lien at the time the court renders judgment." Schwarz, *supra*,
40 BAYLOR L. REV. at 648.

appealed only from the award of damages and attorney fees in the judgment and not from the declaration itself. *Id.*

A certain ambiguity in the *Tarrant Bank* case apparently accounts for your concern that a judgment creditor may be liable for slander of title merely for refusing to execute a partial release of judgment lien as to property the debtor claims to be homestead. The opinion in *Tarrant Bank* does not clearly indicate whether the scope of the appeal included liability issues or was limited to issues relating to damages and attorney fees. The court of appeals affirmed most of the trial court's award of damages and attorney fees. *Id.* at 669. The opinion indicates that the bank "appeal[ed] the trial court's award of $28,086.50 in damages and attorney's fees complaining: . . . that the evidence was legally and factually insufficient to support the judgment." *Id.* at 667. Later in the opinion, the court stated that the bank's second point of error was that "the trial court erred in granting judgment because the evidence was legally and factually insufficient." *Id.* at 668 (footnotes omitted). The point of error may have challenged (or the court may have interpreted it as challenging) the sufficiency of the evidence in support of the lower court's findings as to either (1) both liability and damages (and attorney fees) or (2) only damages (and attorney fees).

An article in *Houston Lawyer* supports the view that *Tarrant Bank* held that a mere refusal to release a judgment lien as to a purported homestead may subject the creditor to liability for slander of title. The authors stated: "The lesson to be learned [from *Tarrant Bank*] is that if there is no question as to whether the property at issue is the judgment debtor's homestead, the judgment creditor should not refuse to give the judgment debtor a partial release of judgment lien as to the homestead property." S. Bradley Todes & Rosa S. Silbert, *Judgment Liens in Texas*, 31 HOUS. LAW. 28, 30 (May-June 1994).

We would disagree that the decision in *Tarrant Bank* can be interpreted as holding that the creditor is obligated to release the "lien" on demand. Such an interpretation of the case would depend on the unwarranted assumption that the case was an appeal of the trial court's findings on liability issues. The procedural context of that case requires that it be interpreted as an appeal only from the damages issues. The eponymous bank did not timely respond to the plaintiffs' request for admissions; consequently, all the requested admissions were deemed admitted. 833 S.W.2d at 668. The bank also refused to produce documents and failed to answer interrogatories, so the trial court sanctioned the bank by entering a default judgment in favor of the plaintiffs on all issues except the amount of damages. *Id.* The trial court then held a trial to determine damages and attorney fees. *Id.* at 668-69. "[L]iability may be determined in a default judgment without evidentiary support as a sanction for failure to provide discovery, and there need only be an evidentiary hearing to establish the amount of plaintiff's damages." *Brantley v. Etter*, 662 S.W.2d 752, 758 (Tex. App.--San Antonio 1983), *writ ref'd n.r.e. per curiam*, 677 S.W.2d 503 (Tex. 1984). Accordingly, because the default judgment was a discovery sanction, the trial court could enter a judgment of liability without evidentiary support.

Therefore, the sufficiency of the evidence to support the liability finding was not reviewable on appeal.

The *Tarrant Bank* opinion shows that the court of appeals properly refrained from reviewing the evidence on liability issues. The opinion does not mention the liability element of falsity. Finding that "[t]here [wa]s some evidence to support the [trial] court's award of actual and exemplary damages," the court of appeals noted that "[t]he [trial] court found that the Bank's failure to give the release was intentional, wilful, and malicious." 833 S.W.2d at 668. The adjectives "intentional, wilful, and malicious" appear to relate to the award of punitive damages rather than to the malice element of the prima facie case of slander of title. Malice as an element of the prima facie case "should mean that the act or refusal was deliberate conduct without reasonable cause," whereas malice to support punitive damages "should mean actual malice, that is, ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a wilful or wanton act." *Kidd v. Hoggett*, 331 S.W.2d 515, 518 (Tex. Civ. App.—San Antonio 1960, writ ref'd n.r.e.). The *Tarrant Bank* court also concluded that the evidence supported the trial court's award of attorney fees for trial but not for appeal, as there was no evidence as to the amount of fees that would be reasonable on appeal. 833 S.W.2d at 669.

All these circumstances compel a conclusion that the court in *Tarrant Bank* reviewed the evidence to determine whether it supported only the trial court's award of damages and attorney fees, not whether it also supported the finding of liability. Having determined that *Tarrant Bank* is not dispositive of your question, we now consider other case law to find an answer.

One variety of slander of title involves a failure to release or disclaim a recorded claimed, but not actual, interest in property. "Th[e Texas Supreme] Court has established that a cause of action to recover damages for the failure to release a purported, though not actual, property interest is a cause of action for slander of title." *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983) (citations omitted). Therefore, a recorded document that creates the appearance of a claim that is not actual provides the requisite falsity and, if the other elements are present, will support an action for slander of title. *See id.* (involving failure to release claim of right of first refusal when right had already expired; damages awarded for failure to release claim of right); *Reaugh v. McCollum Exploration Co.*, 163 S.W.2d 620, 621 (Tex. 1942) (involving failure to release claim under recorded lease that was not signed by all owners and that parties understood would not be binding until signed and acknowledged by all owners); *Kidd*, 331 S.W.2d at 517 (involving failure to release recorded oil and gas lease that had expired).

A potential lien in a homestead created by a duly recorded and indexed abstract of a valid, nondormant, and undischarged judgment is an actual interest and thus is distinguishable from the claimed but not actual interests that are subject to the rule recognized in *Ellis v. Waldrop*. The proper recording of an abstract of a valid, nondormant, and

undischarged judgment is in no sense false and therefore cannot support an essential element of a case for disparagement of title to the homestead. *See Leslie v. Western Steel Co.*, 202 F. Supp. 27, 28 (S.D. Tex. 1962); *see also Westman v. James B. Clow & Sons*, 38 F.2d 124 (W.D. Tex. 1930) ("The abstract of judgment does not of itself assert any claim of lien upon homestead property."). Thus, the court in *Commercial Securities Co. v. Thompson*, 239 S.W.2d 911, 915 (Tex. Civ. App.--Fort Worth 1951, no writ), correctly noted that if a "judgment ha[s] not been discharged, there [i]s no basis for damages for filing the abstract of it." We therefore are of the opinion that a duly recorded abstract of a valid, nondormant, and undischarged judgment cannot in itself constitute a slander of title to the judgment debtor's homestead. *See* 67 Tex. Jur. 3d *Slander of Title* § 2 (1989) (mere filing of abstract of judgment ordinarily does not constitute ground for recovery of damages).

*First National Bank v. Moore*, 7 S.W.2d 145 (Tex. Civ. App.--San Antonio 1928, writ denied), might on cursory reading appear to contradict our conclusion that a duly recorded abstract of a valid, nondormant, and undischarged judgment cannot in itself constitute a slander of title to the judgment debtor's homestead. In that case the judgment creditors refused to execute a partial release of an abstract of judgment against J. P. Moore as to property that Moore and his wife, Pearl F. Moore, claimed to be their homestead and Mrs. Moore's separate property. *Id.* at 146. The facts stated in that case do not indicate that the abstract of judgment at issue was false in any way, yet the court found on motion for rehearing that there was evidence supporting the trial court's award of damages against the creditors for slander of title. *Id.* at 147.

Careful reading will show, however, that the actionable false statements in that case were made outside the abstract of judgment. The court noted that the judgment creditors knew facts that made their judgment lien inapplicable to the judgment debtor's wife's property--namely, that the subject property was the debtor's wife's separate property, while the judgment was against only the husband--but desired to force the debtor and his wife to pay off the judgment by persisting in claiming that their recorded abstract of judgment did impose a lien on the debtor's wife's land. *Id.* at 147. The creditors had continued to resist and assail the debtor's wife's claim of homestead and separate property interests in the land even during the litigation of the case, *id.* at 146; they "were asserting a judgment lien on the land," *id.*, and had "persisted in claiming a lien on her property," *id.* at 147. The court found that such evidence supported the lower court's award of damages. *Id.* Although it is not clear from the opinion what form the creditors' assertions and claims took, it is clear that the assertions and claims were outside the abstract of judgment. Therefore, these outside claims, not the filing of the abstract of judgment itself, gave rise to an action for slander of title.

The situation you present differs from *First National Bank v. Moore*. A judgment creditor's knowledge of the judgment debtor's homestead right does not constitute knowledge that the judgment lien is forever inapplicable to the homestead. Nor does the creditor's refusal to release the potential lien created by the abstract of judgment

constitute a claim that the creditor has a present lien in the homestead property. Compare *Moore*, where the creditors knew that the subject property was the debtor's wife's separate property, while the judgment was against only the husband; in that case the creditors not only refused to release the judgment "lien" in the wife's separate property but also denied that the property was separate and claimed a present lien in it. *Id.*

For the foregoing reasons, and particularly because a properly recorded and indexed abstract of a valid, nondormant, and undischarged judgment is not false in any way, we do not believe that a court would hold that a mere refusal to release a potential judgment lien against the debtor's homestead is an actionable slander of title. The homeowner who has been determined by final judgment to be indebted has no right to demand that the judgment creditor forever relinquish a valuable potential security created by statute to assist in the satisfaction of the indebtedness. If a duty of the creditor to mitigate an impediment to alienation arises at all, it would be at most a duty to disclaim any present lien in the homestead, not to waive the potential future lien.[6]

You also ask whether the Texas Higher Education Coordinating Board may, upon the judgment debtor's request, voluntarily disclaim any present judgment lien in a judgment debtor's homestead. By this question we understand you to ask whether the board may voluntarily execute, for example, a partial release of "lien" as to the purported homestead, upon a satisfactory showing (1) that the property is under a contract of sale that requires the issuance of a policy of title insurance, (2) that the title company requires a partial release of lien or other disclaimer of a present lien as a condition to issuance of a policy on the property, and (3) that the property in fact has remained the debtor's homestead continuously since the time of filing of the abstract of judgment. We believe the board may do so. In order to avoid relinquishing any potential future judgment lien in the property, however, the board should include provisions on the face of the release of lien expressly conditioning the release upon the closing of the specific contemplated sale of the property and stating that the release shall be void in the event that the judgment debtor ever again acquires an interest in the property.

---

[6]We do not consider here whether, in certain circumstances, a judgment creditor might have a duty to disclaim any present lien to avoid liability under some theory other than slander of title.

## S U M M A R Y

A duly recorded abstract of a valid, nondormant, and undischarged judgment may constitute a cloud on the judgment debtor's title to homestead property located in the county where the abstract is recorded but cannot in itself constitute a slander of the judgment debtor's homestead title.

Yours very truly,

**DAN MORALES**
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James B. Pinson
Assistant Attorney General