# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00318-CV
---

**Ben Florey, Appellant**

**v.**

**Estate of Linda McConnell, Appellee**

---
### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 03-099-C368, HONORABLE BURT CARNES, JUDGE PRESIDING
---

## O P I N I O N

In this appeal, we must decide the validity of a real property lien, an inquiry that turns on a dispute regarding the property's homestead status. Ben Florey represented Richard E. McConnell (McConnell) in connection with charges for murdering his wife, Linda McConnell.[1] To secure payment of legal fees, McConnell executed a promissory note payable to Florey, secured by a deed of trust on real property owned jointly by McConnell and the Estate of Linda McConnell. The Estate[2] brought a wrongful death suit against McConnell and obtained a judgment. The Estate sued Florey to invalidate his deed of trust on the property and collect some of its wrongful death

---

[1] Richard McConnell ultimately pled guilty, was convicted, and received a forty-year sentence.

[2] The McConnell's four minor children; the minors' maternal grandparents and next friends, James and Annie Caulkins; and the minors' attorney ad litem, Patricia J. Cummings.

judgment from the proceeds of the property's sale.[3] After a bench trial, the district court declared Florey's lien invalid, specifically finding that the property was a homestead; the court also awarded attorney's fees to the Estate. Florey appeals, contending that his lien is valid because McConnell abandoned the homestead. We will affirm the district court's judgment.

## BACKGROUND

The record shows that on October 9, 2000, McConnell murdered his wife, Linda McConnell, who died intestate. McConnell retained Florey to defend him on the murder charge, agreeing to pay him $75,000. McConnell paid $11,000 of that fee and executed a $75,000[4] promissory note to Florey, secured by a deed of trust on real property owned jointly by McConnell and Linda McConnell.[5] Florey recorded the deed of trust. After it was recorded, the Estate obtained a child support lien and a $1,000,000 wrongful death judgment against McConnell. The Estate recorded its lien and judgment.

Planning to collect its judgment from the sale of the McConnells' property,[6] the Estate brought a declaratory judgment action to quiet title in the property by invalidating Florey's deed of

---

[3] The probate court ordered the sale of the property as part of the administration of Linda McConnell's estate.

[4] Although McConnell's note was for the full amount of the fee, Florey contends that $65,000 plus interest remains due.

[5] The real property is located at 9850 State Highway 29 in Liberty Hill, Texas 78642 and is described as 9.94 acres of land out of the Noah Smithwick Survey, Abstract Number 590, Williamson County, Texas.

[6] The probate court ordered the sale of the property as part of the administration of Linda McConnell's estate.

trust. The property sold for $135,262.68. Half of the proceeds were paid to the Estate and the remaining half were deposited into the registry of the court pending final determination of the Estate's suit to quiet title. After a bench trial, the district court invalidated Florey's lien and awarded the Estate its attorney's fees.

The court entered findings of fact and conclusions of law.[7] Among its findings and conclusions, it determined that:

- McConnell was convicted of murdering Linda McConnell;

- McConnell attempted to transfer the real property to Florey to secure payment of attorney's fees;

- The property in question was classified as homestead property from 1998-2001;[8] and

- McConnell "repeatedly testified" that the property he intended to convey was his homestead.

- The property was the homestead of Richard McConnell, Linda McConnell, and the McConnell children when the deed of trust was executed and when it was recorded;

- McConnell did not abandon the homestead property before signing the note and deed of trust;

- The property was exempt from creditors' claims, including Florey's;

- There is not an exception to the homestead exemption permitting transfer of homestead property for attorney's fees;

---

[7] To the extent that any of the district court's conclusions regarding homestead and abandonment are properly findings of fact, we treat them as such. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979).

[8] McConnell and his wife filed for a homestead exemption in 1999 and their property was designated as a homestead with the Williamson County Appraisal District from 1999-2001.

3

- The deed of trust transfer from McConnell to Florey was an invalid transfer of "homesteaded property"; and

- The deed of trust filed by Florey placing a lien on the homestead property is invalid and unenforceable.

Florey brings eight issues on appeal challenging the district court's (1) subject matter jurisdiction; (2) finding that McConnell did not abandon the homestead property before signing the note and deed of trust; (3) finding that the property was the McConnell family's homestead when McConnell executed the deed of trust and when it was recorded; (4) refusal to find that McConnell owned one-half interest in the property as his separate property, (5) determination that the minors had standing to assert a homestead right superior to McConnell's; (6) conclusion that the deed of trust to Florey was invalid; (7) denial of Florey's counterclaims and requests for relief, and (8) award of attorney's fees to the Estate.

**DISCUSSION**

**Homestead interests and abandonment**

Because Florey's issues center on the homestead status of the property, we begin by briefly surveying the legal principles governing homestead interests. The homestead interest is a legal interest created by the constitution that protects property from all but the few types of constitutionally permitted liens that may be imposed against a homestead. *See Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992); *see* Tex. Const. art. XVI, § 50. Homesteads are protected from forced sale for the payment of debts, except for those debts specifically enumerated in the constitution, including debts incurred for purchase money on the homestead, taxes thereon, work or

services performed thereon, certain extensions of credit, and certain reverse mortgages. Tex. Const. art. XVI, § 50(a); *see* Tex. Prop. Code Ann. § 41.001(b) (West 2000 & Supp. 2005). Constitutional homestead rights protect citizens from losing their homes; accordingly, statutes relating to homestead rights are liberally construed to protect the homestead. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 807 (Tex. App.—Austin 2004, pet. denied). Homestead rights have historically enjoyed great protection in our jurisprudence. *See id.* (citing *Mills v. Von Boskirk*, 32 Tex. 360, 362 (1869)).

Property that has been designated as a homestead will only lose that character through abandonment, death, or alienation. *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex. App.—Austin 2005, no pet.). Evidence establishing the abandonment of a homestead "must be undeniably clear" and must show "beyond almost the shadow, at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *Burkhardt v. Lieberman*, 159 S.W.2d 847, 852 (Tex. 1942); *Estate of Montague v. Nat'l Loan Investors, L.P.*, 70 S.W.3d 242, 248 (Tex. App.—San Antonio 2001, pet. denied). To be an abandonment that would subject the homestead property to seizure and sale, there must be a voluntary leaving or quitting of the residence. *King v. Harter*, 8 S.W. 308, 309 (1888); *McWilliams v. Adoue*, 51 S.W.2d 1104, 1107 (Tex. Civ. App.—El Paso 1932, writ ref'd); *Flynn v. Hancock*, 80 S.W. 245, 246 (Tex. Civ. App.—San Antonio 1904, no writ). Whether one has abandoned a homestead is generally a fact question. *Scott v. Estate of Scott*, 973 S.W.2d 694, 695, 696 (Tex. App.—El Paso 1998, no pet.); *Exocet, Inc. v. Cordes*, 815 S.W.2d 350, 355 (Tex. App.—Austin 1991, no writ); *see Chesson*, 149 S.W.3d at 808. If a lien that is not constitutionally permitted is placed on property that has not lost its homestead character, the lien on the property is void. "A

5

mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991); *see* Tex. Const. art. XVI, § 50(a); *Inge v. Cain*, 65 Tex. 75, 79 (1885); *Estate of Montague*, 70 S.W.3d at 248.

**Subject matter jurisdiction**

In his first and fifth issues, Florey contends that the district court lacked subject matter jurisdiction over the suit because the Estate lacked standing to assert McConnell's homestead right. Standing is a prerequisite to subject matter jurisdiction. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Whether a court has subject matter jurisdiction is a question of law that we review *de novo*. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

Florey urges that the Estate lacks standing to assert McConnell's homestead right, which is personal, unassignable, and only available to McConnell, his successor in interest, or one whose rights are affected by the owner or holder of that right. *See Williamson v. Kelly*, 444 S.W.2d 311, 314 (Tex. Civ. App.—Fort Worth 1969, writ ref'd n.r.e.); *see also Hoffman v. Love*, 494 S.W.2d 591, 593 (Tex. Civ. App.—Dallas 1973, writ ref'd n.r.e.). But a void instrument has no effect, even as to persons not parties to it, and a contention that the deed of trust is void under homestead law may be asserted by anyone whose rights are affected by the instrument. *See McGahey v. Ford*, 563 S.W.2d 857, 861 (Tex. Civ. App.—Fort Worth 1969, writ ref'd n.r.e.) (citing *J. P. Wooten Motor Co. v. First Bank of Swenson*, 281 S.W. 196, 197 (Tex. Comm'n App. 1926, judgm't adopted)). We conclude that the Estate had standing to contest the validity of Florey's lien

6

based on McConnell's homestead interest because the Estate's rights were affected by McConnell's attempted transfer of the property to Florey. We overrule Florey's first and fifth issues.

**Validity of Florey's lien**

In his second, third, and sixth issues, Florey attacks the sufficiency of the evidence supporting the district court's findings of fact and conclusions of law regarding the invalidity of Florey's lien. The district court's findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions, *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991), and are similarly reviewed for legal and factual sufficiency of the evidence. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When reviewing the evidence for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. Evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id*. at 827.

When reviewing the evidence for factual sufficiency, we must weigh all the evidence in the record and overturn the findings only if they are so contrary to the overwhelming weight of

the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We may not pass upon the witnesses' credibility or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

We review the district court's legal conclusions *de novo*. *BMC Software*, 83 S.W.3d at 794. The court's conclusions will be upheld unless they are erroneous as a matter of law. *Chesson*, 149 S.W.3d 796 at 802-03. Incorrect conclusions will not require reversal if controlling findings of fact will support a correct legal theory. *Id.*

Florey challenges the district court's findings that the property was a homestead and that McConnell did not abandon the homestead property, the basis for the district court's conclusion that his deed of trust was invalid and unenforceable. Generally, the burden of proof in an action to assert homestead rights is on the party asserting those rights. *Fajkus v. First Nat'l Bank*, 735 S.W.2d 882, 885 (Tex. App.—Austin 1987, writ denied) (citing *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972)). Whether property is a homestead presents a fact-intensive inquiry that considers the owner's concurrent usage and intent to claim the property as a homestead. *See Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158-59 (Tex. App.—Dallas 1992, writ denied); *see also Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 515 (Tex. 1998). But the ultimate issue of whether Florey had a valid lien on the property owned jointly by McConnell and the Estate of Linda McConnell in light of the asserted homestead status is a question of law. *Commonwealth Land Title Co. v. Nelson*, 889 S.W.2d 312, 321-22 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

McConnell's deed of trust to Florey states that "this deed of trust and the note are given for the following purposes: Legal Services." The deed of trust does not contain any disclaimer

8

of the homestead protection. *Cf. Sanchez v. Telles*, 960 S.W.2d 762, 771 (Tex. App.—El Paso 1997, pet. denied) (homeowner's disclaimer in deed of trust stated, "This is not my homestead."). A lien to secure the payment of attorney's fees is not among the permissible homestead exceptions in the Texas Constitution. Tex. Const. art. XVI, § 50(a); *see also* Tex. Prop. Code Ann. § 41.001(b) (West 2000 & Supp. 2005) (identifying encumbrances that may be properly fixed on homestead property). Because Florey's lien is not permitted by any exception to the constitutional protection of homestead property, we must determine whether McConnell abandoned the homestead property.

Relying on *Sanchez v. Telles*, Florey asserts that McConnell abandoned his homestead property because he was not occupying it and did not have any intention to return. *See* 960 S.W.2d at 770 ("To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead."). In *Telles*, a homeowner guaranteed her son-in-law's court appearance by signing a deed of trust securing a note to Telles, a bail bondsman. *Id*. at 764. After the son-in-law failed to appear, the property was sold to Sanchez, a third party who argued that he was a bona fide purchaser. *Id.* at 766. Sanchez argued that Telles's claim was void because of the homestead nature of the property. *Id.* at 768. Affirming a summary judgment in favor of the bail bondsman, the court held that there were no genuine issues of material fact that the property was homestead. *See id.* at 771. *Telles* is factually distinct from this case because the homeowner there did not claim the property as her homestead or file any homestead designation concerning the property in question. *Id*. at 764-65. Further, none of the evidence in the *Telles* record contradicted her prior sworn and unequivocal disclaimer in the deed of trust stating, "This is not my homestead." *Id*. at 771.

9

Unlike *Telles*, this record contains evidence that a reasonable fact-finder could credit in support of the finding that the property was a homestead and that McConnell did not abandon his homestead right in the property. McConnell and his wife designated the property as a homestead with the Williamson County Appraisal District in 1999 and it retained that status until 2001. On April 6, 2001, while the homestead designation remained in effect, McConnell signed the deed of trust to Florey; the designation also was in effect on May 31, 2001, when Florey recorded the deed. In his deposition, McConnell testified that the property was his homestead when he signed the deed of trust and note. Although McConnell testified that he abandoned the property after committing his crime and did not intend to return to it, he also testified that he and his minor children were living on the property when the crime occurred, his personal possessions and those of his children remained in the house, he did not have anywhere else to live, and he probably would have identified the property as his home if he had to give a home address. During trial, when asked whether he might have used "home" and "homestead" interchangeably in his depositions, McConnell clarified that the property was a homestead:

> [t]hat was my house. It was a homestead. Once you put the homestead on it for tax purposes, it stays a homestead, as far as I know, until you sell it or go to the tax office and change it. That was the home that I was living in. For tax purposes, it was a homestead.

The record shows that the evidence of the homestead's abandonment is not "undeniably clear." *See Burkhardt*, 159 S.W.2d at 852.

As in any other case involving a homestead claim, Florey had the burden of proving abandonment with legally and factually sufficient evidence. *See Cordes*, 815 S.W.2d at 355. In

10

*Cordes*, a creditor presented a similar claim of homestead abandonment to this Court, seeking judicial foreclosure of its judgment lien on the property of a person who had been incarcerated. *Id.* at 351. This Court noted that it would not set aside the jury's refusal to find abandonment unless the record showed that the jury's findings were factually insufficient. *See id.* at 355. Because there was sufficient evidence to support the jury's findings that the property at issue was homestead and was not abandoned—even though Cordes did not occupy the property during his prison sentence—we affirmed the court's judgment. *Id.* Here, as in *Cordes*, the findings that the property was a homestead and that it was not abandoned were supported by sufficient evidence. Accordingly, Florey's second and third issues are overruled. Also, because the evidence supports the district court's finding that the homestead was not abandoned, the court's conclusion that Florey's lien on the homestead property was invalid and unenforceable was not erroneous as a matter of law. We thus overrule Florey's sixth issue.

Because we agree with the district court's conclusion that Florey's lien for attorney's fees on the homestead property was invalid and unenforceable, Florey's seventh issue, complaining about the denial of his counterclaims and requests for relief, is overruled. Additionally, because Florey's deed of trust encompassed the entirety of the McConnells' real property—all of which is homestead and exempt from the lien for legal fees—we also overrule Florey's fourth issue concerning characterization of half of the real property as McConnell's separate property.

**Attorney's fee award**

In his eighth issue, Florey contends that the district court abused its discretion in awarding attorney's fees to the Estate. Under the Uniform Declaratory Judgments Act, the court

"may award . . . reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The court's decision to award attorney's fees under the UDJA is reviewed on appeal for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2005) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). We employ a hybrid analysis in which the "reasonable and necessary" requirements are questions of fact determined by the fact-finder but the "equitable and just" requirements are questions of law for the court. *Id.* at 161. The party seeking to recover attorney's fees bears the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

The Estate's pleadings recite that it filed suit under the UDJA "for declaration of the invalidity of a certain document and claim made by Defendant Ben Florey, to an interest in the hereinafter described real property, in order to quiet title to property in which Plaintiffs have an interest." The Estate's claim, which sought to resolve a dispute over the validity of Florey's deed of trust on the McConnells' property, is authorized by the terms of the UDJA:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997).

Florey contends, however, that the Estate nonetheless cannot properly bring its quiet title claim under the UDJA. He contends that (1) attorney's fees are not available in suits to quiet title; and (2) the Estate cannot use the declaratory judgments act as a vehicle to recover attorney's

fees. *See Southwest Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied).

Florey is correct that attorney's fees are not recoverable in a suit to quiet title, as that action is traditionally known. A suit to quiet title is equitable in nature and the principal issue in such suits is "the existence of a cloud on the title that equity will remove." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.). The suit to quiet title "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Id.* (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)). Attorney's fees are not recoverable in such actions. *Sadler v. Duvall*, 815 S.W.2d 285, 293-94 (Tex. App.—Texarkana 1991, writ denied) (in suits to quiet title, attorney's fees not recoverable either under chapter 38, civil practice and remedies code, or as component of actual damages).

The lack of availability of attorney's fees under this common law or equitable claim, of course, does not alone foreclose use of the UDJA to obtain a declaration concerning the lien that will have the effect of quieting title. *Cf. Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 641 (Tex. 2004) (declaratory judgment to determine homeowners' policy coverage); *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 637 (Tex. 2000) (declaratory judgment for construction of will); *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 788 (Tex. 1995) (declaratory judgment to determine parties' interests in uranium). But some doubts about the use of the UDJA in suits to quiet title have been raised by *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004). In *Martin*, the supreme court held that a suit over a boundary dispute could not be brought under the UDJA because it was in substance

13

a trespass-to-try title action. The rationale of *Martin* rested upon the exclusive nature of the statutory trespass-to-try title action, which the legislature specified as "*the* method of determining title to lands, tenements or other real property," and the fact that the legislature did not provide for attorney's fees in such actions. Tex. Prop. Code Ann. § 22.001(a) (emphasis added); *see Martin*, 133 S.W.3d at 267.

In *Martin*'s aftermath, several of our sister courts have held that attorney's fees under the UDJA are unavailable in suits to quiet title, at least where such suits are deemed equivalent with trespass-to-title actions. *See*, *e.g.*, *Sani v. Powell*, 153 S.W.3d 736, 746 (Tex. App.—Dallas 2005, pet. denied) (denying recovery of attorney's fees when essence of suit is in trespass to try title); *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied) ("Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form."); *Southwest Guar. Trust Co.*, 981 S.W.2d at 957. Other courts have permitted attorney's fees recoveries under the UDJA in such instances; however, most of these decisions do not squarely address the contention raised by Florey here, whether such an award is actually available. *See*, *e.g.*, *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 333-34 (Tex. App.—Fort Worth 1998, pet. denied) (termination of oil lease based on quiet title and slander of title claims brought as declaratory judgment action); *Industrial Structure & Fabrication v. Arrowhead Indus. Water*, 888 S.W.2d 840, 844-45 (Tex. App.—Houston [1st Dist.] 1994, no writ) (declaratory action to remove cloud on title resulting from invalid lien); *First Nat'l Bank at Lubbock v. John E. Mitchell Co.*, 727 S.W.2d 360, 363 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (declaratory action to remove cloud on title resulting from abstracted judgment against homestead property); *Anderson v. McRae*, 495

14

S.W.2d 351, 356 (Tex. Civ. App.—Texarkana 1973, no writ) (declaratory action to quiet title and declare rights involving easement).

Assuming without deciding that the UDJA is unavailable in suits to quiet title that are equivalent to trespass-to-try title actions, we conclude that this limitation does not apply here. Florey has not contended that the Estate's claim to quiet title is governed by the trespass-to-try title statute, and we do not believe that it is. A trespass-to-try title suit seeks title and possession of real property, and imposes unique and somewhat burdensome procedural requirements. *See Martin*, 133 S.W.3d at 265; *El Paso v. Long*, 209 S.W.2d 950, 954 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.); *cf. Roberson v. City of Austin,* 157 S.W.3d 130, 136-37 (Tex. App.—Austin 2005, pet. denied) (suits challenging validity of easement, a *non*-possessory interest in real property, do not fall within trespass-to-try title statute and can be brought under UDJA); *see also* Tex. R. Civ. P. 783-809. The Estate's suit, by contrast, seeks adjudication of the validity of Florey's deed of trust as it impacts his entitlement to proceeds from the sale of the McConnell property. Although a declaration regarding the validity of the deed of trust could ultimately have impacted title and possessory rights to the property, we doubt that the legislature intended for the trespass-to-try title statute to displace or subsume every statutory or common law claim (*e.g.*, suits to rescind deeds) having such an impact. *See generally* 17 William V. Dorsaneo, Texas Litigation Guide § 257.01[3][a], [4] (2005). The Estate's suit has a more indirect impact on title and possession to real property than the boundary dispute in *Martin*, and we conclude that its rationale does not apply here.

Finding no bar to the availability of attorney's fees under the UDJA, we now address Florey's assertions that the district court's award of attorney's fees lacked a factual and evidentiary

15

basis. The district court's findings include the amounts of the Estate's counsel's hourly rates and total hours. The court further found that such fees were reasonable for the services rendered and necessary to the prosecution of the case. The court found that the attorney's fees in this case were reasonable based on the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the services properly, the fee customarily charged in Williamson County for similar legal services, the amount involved, the results obtained, the experience, reputation, and ability of the attorneys and the fixed nature of the fee for services rendered.

The court's findings are supported by the record, including testimony by counsel for the Estate that he had been licensed to practice law since 1977, had practiced law in Williamson County since 1987, was board certified in civil and criminal trial law, was familiar with the rates normally charged for the type of work he performed, and had spent 151 hours working on the case at a rate of $200 per hour. Counsel also testified that in his opinion a reasonable and necessary attorney's fee for representing the Estate in this case was $25,000. Florey did not offer any controverting evidence. The evidence is sufficient to support a finding that the $25,000 attorney's fees award was reasonable, and we find nothing to indicate the fees were inequitable and unjust. Courts may award an amount of attorney's fees as a matter of law based on evidence that is not contradicted by any other witness or attendant circumstances, is clear, direct, positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). We conclude that the district court did not abuse its discretion in awarding attorney's fees to the Estate. We overrule Florey's eighth issue.

## CONCLUSION

Having found that the district court had subject matter jurisdiction, that Florey's lien on the homestead property for attorney's fees was invalid and unenforceable, and that the court did not abuse its discretion in awarding attorney's fees to the Estate, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices B.A. Smith, Puryear and Pemberton

Affirmed

Filed:   June 9, 2006