

## NUMBER 13-07-00111-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RICHARD PAUL KORENEK, JR.
AND JAMES LAWRENCE KORENEK,                          Appellants,

v.

DENNIS KORENEK, ET AL.,                               Appellees.

### On appeal from the 329th District Court
### of Wharton County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellants, Richard Paul Korenek, Jr. and James Lawrence Korenek, appeal from a jury finding favoring appellees, Dennis Korenek, John Lee Korenek, Janice Korenek Kight, Delores Korenek Stavena, and Lawrence Korenek.  All parties to the instant case are siblings.  Appellees sought a declaratory judgment setting aside a deed of gift signed

by Adela Korenek, their mother, conveying 185.5 acres to appellants, and requested attorney's fees. The jury found that Adela Korenek was of unsound mind at the time the deed was executed, and that appellants failed to comply with the fiduciary duties owed to Adela Korenek concerning the execution of the deed; the jury also awarded appellees $39,596.75 in attorney's fees. By two issues, appellants contend that: (1) the evidence was legally and factually insufficient to support the jury's finding that Adela Korenek was of unsound mind at the time she executed the deed; and (2) the attorney's fees award should be reversed because the appellees lack capacity to recover under the Texas Declaratory Judgments Act. We affirm.

## I. BACKGROUND

### A. Family History

Adela Korenek is the mother of eleven children: John Lee Korenek, Dorothy Jane Merta, Richard Paul Korenek Jr., Helen Theresa Hubenak, James Lawrence Korenek, Delores Marie Stavena, Lawrence Henry, Beatrice Ann Rachunek, Janice Marie Kight, Dennis Ray Korenek, and Wayne Allen Korenek.[1]

Adela's husband, who died on April 6, 1985, devised by will four tracts of land totaling 310.5 acres to Adela. In February 1987, Adela revised her will granting Richard and Wayne a life estate in the two acres surrounding her home and in another fifty acres of land. Adela's will also devised to each of her children an equal interest in the remainder of her property. On April 26, 2002, however, Adela executed a deed of gift ("the deed") conveying two of the four original tracts of land, totaling 185.5 acres, to Richard and James.

---

[1] Dorothy, Helen, and Wayne are not parties to the suit.

On December 17, 2004, appellees filed their original petition for declaratory judgment, in which they sought a judgment declaring: (1) that the deed is null and void; (2) that the property subject to the deed should pass through Adela Korenek's testate estate; and (3) that appellees should be awarded reasonable and necessary attorney's fees. Appellants answered with a general denial and their own request for attorney's fees. The case was tried before a jury, which found that the deed should be set aside because Adela was not of sound mind at the time the deed was executed and because Richard and James breached a fiduciary duty owed to Adela.

## B. Evidence Regarding Adela's Competence

From 1998 until the time of her death, Adela was usually cared for by Cynthia Vargas on weekdays, by Richard at night, and by her daughters and daughters-in-law on the weekends. During this time, Adela also had several routine visitors and underwent frequent medical examinations. At trial, some of her family members, caretakers, and friends testified about her competence. Mark Marconi M.D., medical director of two nursing homes, testified as an expert witness about Adela's medical history.

*1. Evidence Supporting Adela's Competence*

Audrey Gregurek, Adela's granddaughter, testified that she saw her grandmother approximately every other week for the last twenty years of her life. Audrey noted that they engaged in normal and routine conversation about various aspects of life. Audrey testified that Adela had told her about plans to deed a 135-acre-tract of land to Richard and James. Audrey stated that she believed Adela eventually executed the deed out of the love she had for Richard and James.

Appellant James Lawrence Korenek testified that he gave Adela the deed at least

3

one week before the date it was signed, and that he believed his mother read it before she signed it. James also stated that he did not ask or urge his mother to sign the deed. James noted that the deed only conveyed the surface rights to James and Richard and that the eleven children retained equal interests in the mineral rights.

Beatrice Rachunek testified that her sisters and sisters-in-law became Adela's primary weekend caretakers in approximately 1998; however, by 2003, most of her sisters and sisters-in-law had "filtered off," and Beatrice, Helen, Dorothy, and Audrey were the ones that "took up the slack" in caring for Adela. Beatrice stated that Adela had spoken with her about the deed prior to signing it. Beatrice also stated that she "did not believe [Adela] was coerced," and that she believed her mother intended to convey the property to Richard and James because Richard had "devoted his entire life to taking care of [Adela]" and because her mother wanted to ensure that Richard would always have a home and remain able to farm the land. Beatrice testified that even at the times nearing death her mother was not easily manipulated, recognized people she had not seen in over four years, and correctly recited all prayers verbatim when the priest came to deliver her last rites. Beatrice noted she would be "okay" if her mother's wishes were fulfilled in the deed even if it meant she would "lose out" on the interest in the land that she would otherwise have been granted under Adela's will.

Helen Hubenak stated that she took care of Adela's financial matters since Adela's husband died. Helen also stated that she was aware of the deed before her mother signed it because Adela had told Helen that she wanted to convey the property, and Adela had asked James to go to Adela's attorney to have a deed drafted. Helen stated that she did

4

not believe her mother was coerced or manipulated into signing the deed, but rather that it was her mother's intention to execute the deed. Helen noted that her mother chose not to sign the deed in front of the entire family because she was a very private person. Helen further testified she did not feel "slighted or cheated" by losing the property interest she possessed under the will because the property would be given to Richard and James in accordance with her mother's wishes.

Vargas testified that she began caring for Adela in June or July 1998, and continued caring for Adela until her death. Vargas testified that Adela had a "good sharp personality" most days. Vargas testified that Adela enjoyed having visitors, engaged in conversation with them, and appeared to understand everything that was going on around her. Vargas further testified that she witnessed Adela sign the deed in question. Vargas stated that Adela was asked if she knew what was being signed that day. Vargas also testified that Adela did not seem confused at the time she signed the deed.

Dorothy Hyek, Adela's friend, also testified at trial. Hyek admitted that she was present at the time the deed was executed and that she also witnessed Adela signing the deed. Hyek testified that it appeared that Adela knew what she was signing because she "signed the papers pretty quick" after she received them.

John Hrncir, a notary, testified that he witnessed Adela execute the deed, and he notarized it. Hrncir testified that he thought Adela understood what she was signing and that Adela appeared to want to sign it. Hrncir also testified that he would not have notarized the deed if he felt that Adela did not understand it.

Ethyln Popp, Adela's friend, testified that she would engage in conversation with

5

Adela, and Adela usually seemed to know what was happening around her. John Drozd, a clergyman, delivered communion weekly to Adela during her last two years of her life. He testified that Adela always recognized him and was able to recite all the appropriate prayers from memory. Drozd testified that Adela usually talked about Richard or just engaged in general conversation.

*2.    Evidence Supporting Incompetence*

Dr. Marconi testified as an expert witness via video deposition about Adela's mental competence. Dr. Marconi never personally met with Adela but, after reviewing her medical records from 1994 until the time of her death, he testified that he believed Adela suffered from dementia and depression at the time the deed was executed; therefore, Adela lacked the capacity to execute the deed. Dr. Marconi based his belief on Adela's medical records, including: documents showing that previous doctors prescribed several medications for Adela which are typically used to treat depression and dementia; CT brain scans indicating chronic ischemic disease which can cause multi-infarct dementia; and the medical assessments of five doctors who diagnosed Adela as suffering from dementia as early as September 22, 1999. Dr. Marconi also testified that he believed Adela's history of stroke, depression, heart conditions, and diabetes contributed to the development of her dementia. Dr. Marconi further testified that Adela's death from aspiration pneumonia is indicative of dementia because the most common causes of death for individuals suffering from dementia are pneumonia and infection.

Appellee Delores "Honey" Stavena testified that at the time the deed was executed, her mother could no longer perform many daily-living activities, and that she believed her

6

mother was not of sound mind. Delores stated that her mother seemed hurt and confused and as if she did not understand what was occurring with regard to the deed, when she inquired about the deed on February 12, 2003. Delores also testified that when she called her brother James Korenek to inquire about the deed, James accused her of injuring their mother instead of answering questions about the deed. Delores also tesfified that her mother suffered from depression her entire life and often had mood swings.

Appellant Richard Korenek testified that he believed his mother suffered from depression since he was growing up and that, when her condition worsened, Vargas began to stay overnight to take care of her. Richard stated that his mother had previously conveyed land in Weimar, Texas, equally among all eleven children in 1993.

Vargas testified that, during the last six months of Adela's life, Adela sometimes stayed awake for three-and-a-half days without any sleep. Cynthia also testified that Adela would occasionally have mood swings or became ornery because she was accustomed to having things her way.

## II. Discussion

### A. Sufficiency of the Evidence

Appellants, by their first issue, argue that the evidence was legally and factually insufficient to support the jury's finding that Adela Korenek was of unsound mind at the time the deed was executed. We disagree.

*1. Standard of Review*

In considering no evidence or legal sufficiency points of error, we consider only the evidence and inferences from the evidence favorable to the decision of the trier of fact, and

7

disregard all evidence and inferences to the contrary.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge must fail.  *See Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999).  If the evidence furnishes some reasonable basis for supporting the challenged finding, then more than a scintilla of evidence exists.  *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 413 (Tex. 1998).  In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but we must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly shows bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust.  *Id.* at 406-07.

*2.    Legal and Factual Sufficiency*

At trial, the first jury question read:  "Do you find from a preponderance of the evidence that Adela Korenek was of sound mind at the time of executing the Deed on April 26, 2002?"[2] Appellants made no objection to the charge at trial nor did they submit their own proposed charge prior to trial.  Therefore, we analyze the legal and factual sufficiency

---

[2] We acknowledge that generally a person who signs a document is presumed to have read and understood the document and the burden is on the party seeking to void the document to prove incompetence. *Dubree v. Blackwell*, 67 S.W.3d 286, 289 (Tex. App.–Amarillo 2001, no pet.); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., *Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment* PJC 101.33 (2003).

8

of the evidence under the unchallenged jury charge given at trial. *See Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

At trial, Dr. Marconi testified about several medications that Adela had been prescribed that are typically used to treat dementia and depression. Furthermore, Dr. Marconi also testified that, according to the medical records, at least five different doctors diagnosed Adela with dementia in their medical assessments. Moreover, several witnesses testified about Adela's physical dependence and some of them also testified as to her life long depression and mood swings. After reviewing the medical and witness testimony, we conclude that there was more than a scintilla of evidence supporting the jury's finding that Adela was not of sound mind at the time the deed was executed. Therefore, the evidence was legally sufficient to support the jury's finding. *See Gen. Motors Corp.*, 997 S.W.2d at 588.

Furthermore, after reviewing the record and looking at evidence both favorable and contrary to the jury's finding, we do not find that the jury's finding was against the great weight and preponderance of the evidence as to be manifestly unjust such that it requires us to substitute our judgment for that of the fact-finder. *See Mar. Overseas Corp.*, 971 S.W.2d at 406-07. Moreover, it should be noted that due to appellant's failure to object to the charge, the jury was required to determine whether the preponderance of the evidence supported a finding that she was of *sound mind* at the time the deed was executed, not whether she was of unsound mind. *See City of Keller*, 168 S.W.3d at 827; *see also Dubree v. Blackwell*, 67 S.W.3d 286, 289 (Tex. App.–Amarillo 2001, no pet.). Therefore,

we find that the evidence was factually sufficient to support the jury's finding.

Appellants' first issue is overruled.

**B.     Awarding of Attorney's Fees**

By their second issue, appellants argue that appellees could not recover attorney's fees under the Texas Declaratory Judgments Act because appellees were not "persons interested under a deed" as required by the statutory language.  *See* TEX. CIV. PRAC. & REM. ANN. § 37.004 (Vernon 1997).  Appellants argue that "persons interested" refers to persons made parties to a deed, not merely estate beneficiaries.

The Texas Declaratory Judgments Act is a remedial statute and it is to be liberally construed and administered.  *Id.* § 37.002(b) (Vernon 1997).  The statute provides that "[a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."  *Id.* § 37.004(a).   Moreover, attorney's fees are available in a suit for a declaratory judgment. *Id.* § 37.009 (Vernon 1997).  A court's award or denial of attorney's fees under the Declaratory Judgments Act is reviewed for an abuse of discretion.  *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004).

We find that individuals instituting suit in order to determine the validity of a deed which may affect their property rights may recover attorney's fees under the Declaratory Judgments Act.  *Florey v. Estate of McConnell*, 212 S.W.3d 439 (Tex. App.–Austin 2006, pet. denied), is instructive in this regard.  In *Florey*, a decedent's estate instituted suit

seeking to void a deed of trust granted by decedent's husband to his attorney to pay for legal fees after being convicted of murdering the decedent. *See id*. Neither the estate or decedent were named parties to the deed of trust, but the court affirmed the trial court's awarding of attorney's fees. *Id*. at 447-450.

Therefore, we find that the trial court did not abuse its discretion in awarding attorney's fees to the appellees. Appellants' second issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ,
Chief Justice

Memorandum Opinion delivered and
filed this the 29th day of July, 2008.