# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-14-00799-CV

<hr>

**William Wiese, Appellant**

**v.**

**Fadya AlBakry, Appellee**

<hr>

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-FM-04-007964, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

<hr>

## M E M O R A N D U M   O P I N I O N

Appellant William Wiese appeals the trial court's order granting appellee Fadya AlBakry's motion to modify an agreed divorce decree. In three issues, Wiese appeals the trial court's modification order removing the decree's restriction on the parties' ability to travel internationally with the children. Because we conclude that the trial court abused its discretion in concluding that material and substantial changes related to the international-travel restriction have occurred since the parties' original divorce decree, we reverse that portion of the trial court's order lifting the international-travel restriction and render judgment in favor of Wiese on this issue.

## BACKGROUND

Wiese met AlBakry, a citizen of Oman, while they were both attending the University of Texas. The couple married in 2001 and had two children, J.W. and C.W. When the couple divorced

in 2005, the children were ages one and two. The agreed final decree of divorce provided that the parties were appointed joint managing conservators of their two children and, among other things, granted Wiese the exclusive right to determine the primary residence of the children. The decree also prohibited the parties from traveling outside of the United States with the children without the written consent of the other party or court order.

AlBakry subsequently filed a petition to modify the parent-child relationship, seeking to modify certain terms of conservatorship, including the restriction on international travel. On September 19, 2014, the trial court held a hearing on AlBakry's petition to modify. At the hearing, AlBakry and Wiese each presented evidence concerning AlBakry's request to modify the 2005 divorce decree's international-travel restriction.

During her testimony, AlBakry explained that since the couple's divorce, she has requested permission from Wiese to travel internationally with the children numerous times and that Wiese has denied her requests every time, including her requests to allow the children to travel to Oman to attend the weddings of AlBakry's siblings. AlBakry testified that she believed that it would benefit the children to expose them to the culture of Oman and to her family, whom she described as regularly traveling to various culturally diverse countries. She also testified that she wanted to expose her children to the food, celebrations, familial customs, and language of the Omani culture and to travel with her family to nearby countries, such as Dubai and Turkey.

AlBakry acknowledged that Wiese's fear that she could abscond with the children to Oman was a reasonable fear at the time of divorce, given that the children were young, but stated that this concern is no longer valid. AlBakry testified that the children are older and now "know their

2

dad's phone number, know his e-mail address, know how to communicate internationally" using cell phones. Further, she testified regarding the children's safety in Oman, describing Oman as being very open and accepting of foreign religions, and relatively peaceful. According to AlBakry, there is no sectarian violence or turmoil in Oman like there is in other areas of the Middle East. Finally, AlBakry explained that she has no desire to return permanently to Oman because of her ties to the United States, where she has lived for nineteen years and has sought permanent residency.

Conversely, Wiese testified that at the time of the divorce it was important to him that the decree included a restriction on international travel because AlBakry had previously threatened to take the children to Oman and not return. Wiese explained that he was still concerned that if the children were allowed to travel to Oman, AlBakry might still abscond with the children or some third party might abduct them and he would be without any legal recourse. Wiese explained that under Omani law, he would have no rights to the children and that Oman would not recognize any court order from the United States with respect to custody or possession because it is not a signatory to the 1980 Hague Convention on the Civil Aspects of International Child Abduction.[1]

In support of his testimony, Wiese presented a report from Abed Awad, an attorney and law school professor with expertise in Islamic law and the Middle East. In his report, Awad explained that Omani courts would not recognize the marriage between Wiese, a non-Muslim, and AlBakry, a Muslim, and would consider the marriage void from its inception. According to Awad's

---

[1] *See* Hague Convention on the Civil Aspects of Int'l Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501. The Hague Convention is a multinational treaty establishing legal rights and procedures for the prompt return of children who have been wrongfully removed from one signatory nation or wrongfully retained in another. *Id.*; *see In re Venor*, 94 S.W.3d 201, 205 (Tex. App.—Austin 2002, orig. proceeding) (explaining purpose of Hague Convention).

report, Omani law would consider Wiese and AlBakry's children to be illegitimate, and as a result, Wiese, as a non-Muslim, would have no custodial or guardianship rights over the children. Awad opined that if AlBakry traveled with the children to Oman she could, as an Omani citizen, petition an Omani court for custody of the children and the court would likely grant her request. Further, because Oman is not a signatory to the Hague Convention, there would be no civil remedies available to Wiese to recover his children.

At the conclusion of the hearing, the trial court denied most of AlBakry's requested modifications to the terms of possession, but granted her request to modify the 2005 decree to "allow[] international travel under certain conditions." Upon request, the trial court entered findings and fact and conclusions of law. Wiese timely filed his notice of appeal, seeking review of the trial court's final judgment modifying the 2005 decree with respect to its lifting of the international-travel restriction.[2]

## STANDARD OF REVIEW

We review a trial court's decision to modify conservatorship for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The abuse-of-discretion standard overlaps with traditional sufficiency standards of review in family law cases. *Zeifman*, 212 S.W.3d at 587-88. As a result, legal and factual sufficiency of the evidence are not independent grounds of error, but are factors in assessing whether the trial court abused its discretion. *Id*. In determining whether the trial court

---

[2] The trial court also modified a provision in the 2005 divorce decree regarding written notice between the parties. Wiese does not challenge this portion of the trial court's modification order.

abused its discretion, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477-78 (Tex. App.—Austin 2002, no pet.). The focus of the first issue is on the sufficiency of the evidence under traditional sufficiency-review standards. *Zeifman*, 212 S.W.3d at 588. Under the second issue, the appellate court determines whether, based on that evidence, the trial court made a reasonable decision, one that was neither arbitrary nor unreasonable. *Id.*

To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 897 (Tex. 2005). An appellate court will sustain a legal-sufficiency challenge to an adverse finding on an issue on which the appellant did not have the burden of proof when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Zeifman*, 212 S.W.3d at 588 (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998)).

In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Echols*, 85 S.W.3d at 477. Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986). The reviewing court cannot

5

substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Id*.

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "The appellant may not challenge a trial court's conclusions of law for factual sufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id*. The court's conclusions will be upheld unless they are erroneous as a matter of law. *Florey v. Estate of McConnnell*, 212 S.W.3d 439, 445 (Tex. App.—Austin 2006, pet. denied). Incorrect conclusions will not require reversal if the controlling findings of fact will support a correct legal theory. *Id*.

## ANALYSIS

To prevail on a petition to modify the terms of conservatorship, the party seeking modification must establish that (1) "the circumstances of the child[ren], a conservator, or other party affected by the order have materially and substantially changed" since the date of rendition of the divorce decree and (2) modification is in the children's best interest. Tex. Fam. Code § 156.101(a)(1). In his first issue on appeal, Wiese asserts that the evidence is legally insufficient to support the trial court's conclusion that there was a material and substantial change of circumstances relevant to the international-travel restriction.

The change-in-circumstances requirement is a threshold issue for the trial court and is based on a policy of preventing constant re-litigation with respect to children. *Zeifman*, 212 S.W.3d at 595. "The requirement of this showing 'serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally

6

broad.'" *Id*. (quoting *In re M.N.G.*, 113 S.W.3d 27, 33 (Tex. App.—Fort Worth 2003, no pet.)). In deciding whether circumstances have materially and substantially changed, the trial court is not confined to rigid rules or definite guidelines. *Id*. at 589; *see In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.). Instead, the court's determination is fact-specific and must be made according to the circumstances of the case. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Zeifman*, 212 S.W.3d at 593). To prove that a material change in circumstances has occurred, the movant is required to show what conditions existed at the time of the entry of the prior order. *Considine v. Considine*, 726 S.W.2d 253, 255 (Tex. App.—Austin 1987, no writ). "Once such conditions have been established, the movant must show what material changes have occurred in the intervening period." *Id*.

The trial court's findings of fact included the following:

(8.)    Since the parties' divorce, William Wiese has remarried, to Channing Wiese. Also since the parties' divorce, Fadya AlBakry has formed a committed romantic relationship with Richard Bennett. Fadya AlBakry and Richard Bennett have lived together since late 2011.

(9)     Since the entry of the *Decree*, Fadya AlBakry was awarded a Master of Arts in Professional Counseling, become a licensed chemical dependency counselor, undertook an internship to become a licensed professional counselor, and now works with private patients.

. . .

(11.)   Fadya AlBakry has lived in the United States for 19 years. After the parties' divorce, Fadya AlBakry obtained permanent resident status in the United States.

(12.)   After the parties' divorce, in June 2005 and December 2005, William Wiese sent letters to the United States Immigration and Naturalization Service requesting that Fadya AlBakry's permanent resident status be terminated.

(13.) After the parties' divorce, William Wiese denied Fadya AlBakry's requests to travel with the children internationally to Oman, as well as to the Bahamas, Canada, Italy, and Mexico.

(14.) No credible evidence was presented at trial to establish that there is any potential risk of international abduction of either minor child by Fadya AlBakry. No abduction prevention measures set out in Texas Family Code section 153.503 are necessary to protect the minor children.

Although the trial court found that these changes had occurred since the original divorce decree, the trial court made only the following finding with respect to whether there had been material and substantial changes warranting modification of the international-travel restriction:

(17.) It is in the best interest of the minor children to be able to travel internationally with both of their parents. Further, material and substantial changes have occurred since April 18, 2005 that support a modification of the international travel restrictions in the Decree. These include that at the time the parties were divorced, [J.W.] was 2 years old, and [C.W.] was 1 year old whereas at the time of trial, [J.W.] was 12 years old, and [C.W.] was 11 years old. Shortly after the parties were divorced, [AlBakry] obtained permanent resident status in the United States. The minor children began attending school since the parties were divorced.

Thus, according to this finding, the court based its material-and-substantial-change determination on four changed circumstances since the parties' divorce. We will address each of these changes in turn.

First, we consider whether the fact that the children are older and have now begun school constitute material and substantial changes since the 2005 divorce decree. This Court has previously recognized that a change in circumstance may be so anticipated and factored into the original decree that the eventuality of the change does not constitute a material or substantial change of circumstances. *Kelly v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00670-CV, 2012 WL 5476840, at *3 n.1 (Tex. App.—Austin Nov. 9, 2012, no pet.) (mem. op.). For example,

8

an increase in a child's age is typically so anticipated that "[i]ncrease in age alone is not a changed circumstance to justify modification unless changed needs are shown." *Zeifman*, 212 S.W.3d at 593. Here, the change in the children's ages and the fact that they have now begun school are circumstances clearly anticipated by the parties at the time of the original decree and cannot serve as the basis for the trial court's material-and-substantial-change determination. *See id.*

Second, liberally construing the trial court's findings, the trial court also based its material-and-substantial-change determination on its finding that the children will now, as opposed to when they were young, benefit from international travel. Applying this Court's reasoning in *Zeifman* to the facts of this case, we conclude that the benefits of international travel, in conjunction with the children's change in age, do not constitute a material and substantial change in circumstances warranting a change in the international-travel restriction.

In *Zeifman*, this Court considered whether there was legally-sufficient evidence to support a modification of a decree's provision regarding the children's education where the evidence presented at the modification hearing largely concerned whether a local private school, to which one of the children had recently been admitted, was better than the public school that she currently attended. *See id.* at 591-92. At the time of the divorce, the parties agreed that they would send their children to public school through high school, unless they later agreed otherwise, and that if they could not agree, the parties would follow the recommendations of the child's teacher at the time. *Id.* at 585. The undisputed evidence presented at the modification hearing was that the child was doing very well in her current school and that she would not be harmed by continuing at her current school. *Id.* at 594. Consequently, we concluded that the evidence was insufficient to support a finding that there had been a material and substantial change in circumstances since the time of the

9

original decree. *Id*. at 595. In effect, this Court rejected the implication that a school with more highly rated academics and advantages is necessarily of such a benefit that a child's admission to the school, standing alone, represents evidence of a material and substantial change. *Id*.

In this case, the evidence presented at the modification hearing primarily concerned AlBakry's desire to travel internationally with her children and to expose them to Omani culture. There was no evidence presented that the children have been or would be harmed by not being able to travel internationally or that they could not adequately learn about their Omani heritage and Omani culture through means other than international travel. When asked directly about the children's need to learn about their heritage and the need to travel to Oman to do so, AlBakry explained:

> ALBAKRY: There's also a lot of cultural things they would never get here. My parents live right on the beach. Every day people work until 2:00 and the government shuts down. At 2:30, no one works after 2:30. The shops–the retail schedules of the shops are different than here. The daytime schedule is different. Everybody goes out and plays around 4:30. There's a lot of soccer on the beaches. There's different food. By the time I was 13, I had learned two other languages, which I think would be good for the boys to be exposed to at this age.
>
> And there's more. Oman is located at a place where within four hours, you can be in all sorts of continents. You can easily visit Europe, Africa, although I am not a fan of visiting Africa. Asia. There's so much we can do when we're there that you can't from over here.

Although AlBakry testified at length about her Omani family's ability to travel internationally on vacations, she did not explain why her family was unable to travel to the United States to see the children.

While AlBakry's testimony demonstrates some potential benefit to the children of international travel, "potential benefit" is not the applicable standard to support modification of a

10

divorce decree. There must be evidence of a material and substantial change in circumstances since the original decree. The fact that it may be desirable or even generally beneficial for older children to travel internationally is not evidence that a need has arisen in conjunction with the children's age sufficient to demonstrate that there has been a material and substantial change.

Finally, we consider whether the trial court abused its discretion in concluding that material and substantial changes had occurred based on its finding that "after the parties were divorced, [AlBakry] obtained permanent resident status in the United States." In determining whether a restriction on international travel is necessary, a trial court utilizes the Family Code's statutory framework for determining whether there is risk of international abduction and ordering preventive measures based on that risk. *See* Tex. Fam. Code §§ 153.501-.503. In determining the risk of international abduction under section 153.502, the trial court engages in a two-step process: (1) determine if there is credible evidence of a risk of abduction; and (2) if so, evaluate the risk. *See id*. § 153.502. If the court determines that there is a potential risk of abduction, the court must then evaluate that risk by considering whether the parent (1) has strong familial, emotional, or cultural ties to another country, particularly a country that is not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction; and (2) lacks strong ties to the United States, regardless of whether the parent is a citizen or permanent resident of the United States. *Id*. § 153.502(b)(1)-(2).

Under the statute, a parent's residency status is immaterial to the trial court's evaluation of potential risk of abduction. And, although a trial court considers certain factors in evaluating the risk for purposes of determining whether a travel restriction is necessary, including a parent's "ties to the United States," the statute expressly provides that a parent's residency status

is not relevant to that analysis. As a result, a finding that there has been a change in a parent's residency status cannot serve as the basis for a finding that there has been a material and substantial change with respect to the imposition or modification of an international-travel restriction. The trial court abused its discretion to the extent the trial court based its material-and-substantial-change determination on a change in AlBakry's residency status.

Because the trial court abused its discretion in finding a material and substantial change of circumstances, we sustain Wiese's first issue on appeal.[3]

## CONCLUSION

We reverse that portion of the trial court's order modifying the restriction on international travel as provided in the parties' 2005 agreed divorce decree, and render judgment in favor of Wiese with respect to that restriction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Rendered

Filed: June 1, 2016

_____

[3] In his second and third issues, Wiese contends that (1) the trial court erred in considering the testimony and vacation photos of a local attorney in deciding whether to lift the international-travel restriction; and (2) under Texas's Prevention of International Child Abduction Statute, Tex. Fam. Code §§ 153.501-.503, the trial court erred in concluding that there was no credible evidence of risk of abduction and then, as a result, failed to evaluate the risk under the required factors. Because Wiese's first issue on appeal is dispositive, we do not decide these remaining issues. *See* Tex. R. App. P. 47.1.