**Affirmed and Memorandum Opinion filed November 5, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00485-CV

## CAROLYN LARSEN, Appellant

## V.

## ONEWEST BANK, FSB, Appellee

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 2012V-0012**

## M E M O R A N D U M   O P I N I O N

Appellant Carolyn Larsen appeals a summary judgment granted in favor of appellee OneWest Bank, FSB in connection with a reverse mortgage. Carolyn argues in six issues that the trial court erred because she did not waive her homestead rights; she is a borrower under the reverse mortgage who must die before OneWest can foreclose; and the statute of limitations does not bar her

claims. We first conclude that Texas law permits a waiver of homestead rights in connection with a reverse mortgage. We then conclude that the trial court did not err in granting summary judgment on Carolyn's request to declare OneWest's lien void because:

(a) Carolyn effectively waived her homestead rights,

(b) the reference to Carolyn as a "borrower" in the deed of trust does not raise a genuine issue of material fact on OneWest's lien rights, and

(c) OneWest eliminated all genuine issue of material fact on the validity of its lien established by reverse mortgage. We therefore affirm.

## BACKGROUND

Carolyn and Otis Larsen were married from November 10, 1987, until Otis died on November 11, 2010. They purchased a home located on 918 N. Meyer Street in Sealy, Austin County, Texas on August 19, 2004. The home was purchased with community property funds and was the sole residence of Carolyn and Otis.

After the couple saw advertisements about reverse home mortgage loans on television, they met with mortgage broker Avery Oliver. Otis was 70 at the time, and Carolyn was 58. According to Carolyn, Oliver explained how a reverse mortgage works; he also said that only Otis qualified for a reverse mortgage because Carolyn was not yet 62. Oliver told Carolyn she had to deed her interest in the home to Otis so he could obtain a reverse mortgage; Oliver also told Carolyn she could have her name added to the home's deed after she turned 62.

Carolyn, as "non-borrower spouse or resident," signed a document entitled "Waiver of Homestead Rights" on January 12, 2005; in it, she waived "any and all homestead rights that I have as to the real property that will serve as collateral for

2

the subject loan." Otis, as "borrower," entered into a "Texas Home Equity Conversion Loan Agreement" with lender Financial Freedom Senior Funding Corporation ("Financial Freedom"), a subsidiary of IndyMac Bank, FSB, on February 14, 2005. It is undisputed that Otis obtained a home equity conversion mortgage on the home, which is a home loan insured by the Federal Housing Administration that allows an eligible homeowner to convert a portion of home equity into cash.

Otis, as borrower, also signed an "Adjustable Rate Note (Home Equity Conversion)" on February 14, 2005; it stated that, "[i]n return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated February 14, 2005," and up to a maximum principal amount of $144,000, "Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument dated the same date as this Note." The Note also provided that the "Lender may require immediate payment in full of all outstanding principal and secured interest if . . . all Borrowers die." The original payee of the Note was Financial Freedom.

Carolyn and Otis executed an "Adjustable Rate Home Equity Conversion Deed of Trust," which secured payment of the Adjustable Rate Note up to a maximum principal amount of $144,000. The beneficiary of the Deed of Trust was lender Financial Freedom. The Deed of Trust provided that the "Lender may require immediate payment in full of all sums secured by this Security Instrument if . . . All Borrowers die."

Carolyn signed a "Non-Borrower Spouse Ownership Interest Certification" on February 14, 2005, acknowledging that the home may need to be sold to repay the reverse mortgage debt incurred by Otis and she may be required to move from the home if Otis died before she did. She also executed a Special Warranty Deed

on February 14, 2005, conveying her interest in the home to Otis.

On July 11, 2008, the Federal Deposit Insurance Corporation was appointed receiver for IndyMac Bank, FSB. The FDIC sold some of IndyMac Bank's assets and liabilities to OneWest Bank, FSB in March 2009. It is undisputed that Otis's home equity conversion mortgage was sold to OneWest.

According to Carolyn, Otis and Carolyn received approximately $65,000 pursuant to the reverse mortgage.

When Otis died intestate on November 11, 2010, his interest in the home passed to his children from a previous marriage. Otis's children conveyed the interest in the home to Carolyn, and Carolyn continued to live there. After Otis died, OneWest claimed that $84,395.58 was due on the Note and announced its intent to enforce the Note by foreclosing on the home. Substitute Trustee Patricia Posten issued a "Notice of Substitute Trustee Sale" announcing a foreclosure sale of the home on behalf of OneWest at 10 a.m. on February 7, 2012.

Carolyn filed "Plaintiff's Original Petition, including Application for Temporary Restraining Order and Application for Temporary Injunction" on February 3, 2012, naming OneWest, Patricia Posten, and Avery Oliver as defendants.[1] Carolyn alleged that the home is her homestead. Carolyn alleged that OneWest cannot foreclose on the home while she is alive because (1) she and Otis both executed an Adjustable Rate Home Equity Conversion Deed of Trust as borrowers; and (2) the Deed of Trust provides that immediate payment may be required only if all borrowers have died.

Carolyn further alleged that the February 14, 2005 Special Warranty Deed, in which Carolyn conveyed her interest in the home to Otis, is a void "Pretended

---

[1] Posten and Oliver are not parties to this appeal; any claims Carolyn brought against them were severed. We will not address any allegations, pleadings, or arguments relating to Posten and Oliver.

Sale Deed." She alleged it is void because (1) she received no consideration for conveying her interest in the home to Otis; and (2) "execution of the Pretended Sale Deed" by Carolyn was a device "designed by the Lender to defeat the purposes of the homestead exemption granted to Texas citizens" under the Texas Constitution. According to Carolyn, because the "Pretended Sale Deed is void," she "is still an owner of the home and was an owner of the home when the Deed of Trust was executed." Carolyn further contends that the Deed of Trust was void; alternatively, she contends that the Note secured by the Deed of Trust is not due until she dies.

Carolyn asked the trial court to (1) sign a temporary restraining order ordering OneWest, its agents, and Patricia Posten not to foreclose on the home; (2) set a temporary hearing date and, upon hearing, enter a temporary injunction, ordering OneWest, its agents, and Posten "not to foreclose against the home during the pendency of this suit;" (3) "on final trial, grant a judgment declaring that the Pretended Sale Deed is void and either declaring that the Deed of Trust is void and of no force or effect or, in the alternative, that the Note secured by the Deed of Trust is not due until the death of Carolyn Larsen and that the Home may not be foreclosed upon until the death of Carolyn Larsen;" and (4) "on final trial, grant a judgment against OneWest Bank, FSB awarding attorney's fees to Carolyn."

The trial court signed the requested temporary restraining order on February 3, 2012.

OneWest filed a "Response to Plaintiff's Application For Temporary Restraining Order and Application For Temporary Injunction" on April 9, 2012. After holding an evidentiary hearing on Carolyn's Application For Temporary Injunction on April 10, 2012, the trial court issued a temporary injunction.

OneWest subsequently filed its Original Answer, in which it (1) generally

5

denied all allegations in Carolyn's petition; (2) specifically denied that "all conditions precedent have occurred or were performed" pursuant to Texas Rule of Civil Procedure 54; and (3) specially excepted to "Plaintiff's Petition on the grounds that the claims asserted and also the damages sought are only generally alleged" and "OneWest is unable to ascertain what specific causes of action Plaintiff asserts against it." OneWest also asserted that Carolyn failed to state a claim upon which relief may be granted, and that Carolyn's claims are barred by (1) the terms of her Waiver of Homestead Rights and Non-Borrower Spouse Ownership Interest Certification, which preclude any claims against OneWest; and (2) contractual waiver, discharge, release, estoppel and/or estoppel by acceptance of benefits.

OneWest filed a traditional motion for summary judgment. OneWest contended that "the crux" of Carolyn's suit is that she (1) is a living borrower under the Deed of Trust; (2) "continues to maintain her homestead rights because she did not 'intend' to waive her homestead rights when she executed the [Special Warranty] Deed conveying her interest" to Otis; and (3) "was defrauded into executing the [Special Warranty] Deed." OneWest argued the terms in a Note prevail over the terms in a Deed of Trust under Texas law; Carolyn waived her homestead rights when she executed a "Waiver of Homestead Rights;" and Carolyn's claims are barred by statute of limitations.

Carolyn filed "Plaintiff's Second Amended Original Petition, including Application for Temporary Restraining Order and Application for Temporary Injunction." Carolyn alleged that OneWest has no right to foreclose on the home because (1) the Deed of Trust names her as a borrower; and (2) 12 U.S.C. §1715z-20(j) prohibits foreclosure. Carolyn continued to allege that the Special Warranty Deed, by which she conveyed her interest in the home to Otis, was a void

"Pretended Sale Deed." We liberally construe this pleading as stating a claim for declaratory judgment seeking a judgment declaring OneWest's lien to be void.

Carolyn filed a response to OneWest's traditional motion for summary judgment contending that (1) she is a borrower under the reverse home mortgage loan because the Deed of Trust lists her as a borrower and complies with 12 U.S.C. § 1715z-20; and (2) fact issues exist as to whether her conveyance of her interest in the home to Otis by Special Warranty Deed was a sham. OneWest filed a "Reply Brief in Support of Motion for Summary Judgment and Objections to Plaintiff's Summary Judgment Evidence," in which it argued that (1) 12 U.S.C. § 1715z-20 is inapplicable; and (2) the loan documents evidence the parties' intent to let OneWest foreclose on the home when Otis died. Carolyn filed a response to OneWest's reply, in which she argued that the Deed of Trust terms prevail over the terms of the Note.

The trial court signed an order on March 6, 2014, granting OneWest's traditional summary judgment motion and dismissing all of Carolyn's claims against OneWest.

Carolyn filed a motion for new trial on April 7, 2014, and a notice of appeal on June 3, 2014. She filed a motion to modify judgment on June 17, 2014, requesting that the trial court modify its judgment to "reflect that the summary judgment is applicable only to the claims of Defendant OneWest and not to any other claims made in the case" against other defendants. The trial court signed a "Modification of Judgment," which was file-stamped on June 17, 2014. The modified judgment ordered that Carolyn take nothing on her claims against OneWest, and that "all other claims asserted by Plaintiff Carolyn Larsen against other Defendants in this cause be severed and assigned a new cause number . . . and, as a result, this judgment is final."

7

Carolyn's appellate brief contends that the trial court erroneously granted OneWest's summary judgment motion because (1) "a person who has homestead rights in property in Texas cannot waive his homestead interest" as a matter of law; (2) she "presented some evidence to support a finding that the deed executed by [her] should be set aside;" (3) she "presented some evidence to support a finding that the debt resulting in the lien against the homestead does not come due until both" she and her husband Otis Larsen die; (4) she "presented some evidence to support a finding that [she] was a 'borrower' under the reverse mortgage loan and, as a result, any indebtedness resulting in the reverse mortgage loan does not come due until [she] dies;" (5) there is no evidence to "support a finding that claims made by Carolyn" were barred by the statute of limitations raised by OneWest; and (6) there is insufficient evidence to "support a finding that the claims made by Carolyn" were barred by any statute of limitations.

We begin with an overview of reverse mortgages and homestead rights.

## I.    Overview

A reverse mortgage allows homeowners who are at least 62 to convert home equity into periodic payments or advances that a lender makes over the homeowners' remaining lives. J. Alton Alsup, *The New and Improved Texas Reverse Mortgage*, 55 Consumer Fin. L. Q. Rep. 207, 209 (2001). A reverse mortgage is underwritten based on the appraised value of the home equity and the loan term or the homeowner's actuarial life expectancy. *Id*. at 210. Interest accrues only on amounts advanced over the loan's term, and borrowers generally are not obligated to repay principal or interest during their lifetimes. *See id*. at 209. A reverse mortgage is non-recourse debt, and a lender may look only to the proceeds of the home sale for repayment. *Id*. at 209-10.

Making home equity loans available in Texas required amendments to the Texas Constitution's strong protections for homestead rights. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013). The 1869 and 1876 Constitutions allowed three exceptions to the prohibition against forced sale of a homestead, and others have been added by amendments. *See id*. at 570-71. "Exceptions for certain home equity loans and for reverse mortgages, finally adopted by constitutional amendment in 1997, effective January 1, 1998, were extremely controversial, in part because of age-old concerns that lenders would be unfair and borrowers unwise, eroding the protection the homestead is intended to afford." *Id*. at 571 (footnote omitted). "So long leery of any impairment to the homestead, Texas was the fiftieth state in the Union to permit home equity lending." *Id*.

Since 1998, the Texas Constitution has expressly authorized a reverse mortgage as a type of debt that may be secured by a valid lien against homestead property. *See* Tex. Const. art. XVI, § 50(a)(7). A constitutional reverse mortgage is defined as an extension of credit made in conformity with the specifically enumerated provisions in sections 50(k) through (p). *Id*. § 50(k)-(p). According to article 16, section 50(c), "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married." *Id*. § 50(c). Laws relating to homestead rights are liberally construed to protect the homestead. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 443 (Tex. App.—Austin 2006, pet. denied).

## II.   OneWest's Summary Judgment Grounds

This case comes to us on an appeal from an order granting a traditional

9

motion for summary judgment.  An appellate court applies *de novo* review to the grant of a traditional motion for summary judgment using the same standard that the trial court used in the first instance.  *Duerr v. Brown*, 262 S.W.3d 63, 68 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

A traditional summary judgment motion may be granted if the motion and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Id*. (citing Tex. R. Civ. P. 166a(c), and *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, appellants must show that each of the independent arguments alleged in the motion are insufficient to support the order. *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 932 (Tex. App.—Houston [14th Dist.] 1994, no writ).

We may affirm summary judgment only on grounds specifically raised in the motion.  *See Haase v. Glazner*, 62 S.W.3d 795, 800 (Tex. 2001); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).  If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed.  *Fairchild v. Barron*, No. 01-07-00534-CV, 2009 WL 276717, at *4 (Tex. App. - Houston [1st Dist.] Jan. 30, 2009, pet. denied) (mem. op.); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

OneWest moved for summary judgment on three grounds.  First, it argued that Carolyn is not a borrower under the Deed of Trust for two reasons:  (1) Carolyn as a matter of law cannot be a borrower because at 58 years old "she was not old enough to qualify for an [Home Equity Conversion Mortgage] in 2005";

and (2) Otis was the only borrower listed on the Note, all documents executed as part of a loan transaction must be considered together, and Texas law provides that the terms in a note prevail over the terms in a deed of trust if there is a conflict. Second, OneWest argued that Carolyn waived her homestead rights when she signed a document entitled "Waiver of Homestead Rights." Third, OneWest argued that Carolyn's claims are barred by either a two-year or four-year statute of limitations.

## IV.    Carolyn's Contentions on Appeal

As in the trial court, Carolyn does not contest on appeal the validity of the underlying reverse mortgage transaction as to Otis. She does not contend that the requirements for a constitutional reverse mortgage set out in article 16, section 50 are not satisfied as to Otis. Instead, Carolyn disputes the enforceability of the reverse mortgage transaction as to her as a spouse.

At the time the reverse mortgage was obtained by Otis, Carolyn was 58 and ineligible to obtain a reverse mortgage on her own because she was not yet 62. But Carolyn was married to Otis, who was 70 and eligible to obtain a reverse mortgage under article 16, section 50(k)(2). As part of the reverse mortgage transaction, Carolyn executed a Waiver of Homestead Rights, a Non-Borrower Spouse Ownership Interest Certification, and a Special Warranty Deed.

The Waiver of Homestead Rights provides as follows:

### Waiver of Homestead Rights

**\*\*IMPORTANT NOTICE: PLEASE READ CAREFULLY\*\***

I understand and acknowledge by execution of this document that I am waiving any and all homestead rights that I have as to the real

11

property that will serve as collateral for the subject loan.

Should the borrowing spouse or resident predecease you, you may be required to move and sell your home to repay the Reverse Mortgage debt plus accrued interest unless other means of repayment are obtained. We recommend that you seek professional advice before making application for a Reverse Mortgage.

---

**We hereby certify that we have read this NOTICE and are aware of the serious consequences of this action with regard to waiver of homestead rights.**

<u>Signature of Otis Larsen</u>                                      <u>1-12-05</u>

Otis G. Larsen                                                                Date


<u>Signature of Carolyn Larsen</u>                              <u>1-12-05</u>

NON-BORROWER SPOUSE OR RESIDENT          Date

The Non-Borrower Spouse Ownership Interest Certification that Carolyn executed states as follows:

**<u>NON-BORROWER SPOUSE OWNERSHIP INTEREST CERTIFICATION</u>**

(THIS FORM MUST BE SIGNED AND EACH SENTENCE MUST BE INITIALED BY BORROWER AND BY ANY NON-BORROWING SPOUSE)


<strong><u>Statements</u></strong>

Initials          Initials

Borrower      Non-Borrower Spouse


<u>OL</u>              <u>CL</u>

                          Financial Freedom Senior Funding Corporation does not make estate planning recommendations

12

and does not recommend changes to the ownership or vesting of real property that serves as collateral for a reverse mortgage loan.

OL       CL

I understand that any decision concerning the ownership or vesting of real property that may serve as collateral for a reverse mortgage loan involves important legal and tax related issues that require consultation with independent legal and tax experts who are retained solely to represent my interests.

OL       CL

The undersigned hereby acknowledges that they he/she was given ample opportunity prior to closing of this reverse mortgage loan to consult with independent legal and tax experts of his/her own choosing regarding the ownership or vesting of real property that will serve as collateral for the reverse mortgage loan.

OL       CL

Based upon consultations with independent legal and tax experts of my own choosing, the undersigned has determined that it is in his/her best interest to enter into a reverse mortgage loan with one spouse having no ownership interest in the real property that will serve as a collateral for the reverse mortgage loan.


I understand, and by my execution of this document and initialing the boxes above, I confirm the accuracy of each of the statements set forth above.

Signature of Otis Larsen              2/14/2005

Borrower OTIS LARSEN       Date FEBRUARY 11, 2005

_____

13

I understand, and by my execution of this document and initialing the boxes above, confirm the accuracy of each of the statements set forth above. In addition, I understand and acknowledge that should my spouse predecease me or fail to occupy the home where I reside as his/her principal residence, and unless another means of repayment is obtained, the home where I reside may need to be sold to repay Reverse Mortgage debt incurred by my spouse. If the home where I reside is required to be resold, I understand that I may be required to move from my residence.

Signature of Carolyn Larsen                                    2/14/2015

Non-Borrower Spouse CAROLYN LARSEN   Date FEBRUARY 11, 2005

The Special Warranty Deed Carolyn executed and by which she conveyed her interest in the home to Otis provides as follows:

**SPECIAL WARRANTY DEED**

STATE OF TEXAS                    §
                                  §
COUNTY OF AUSTIN                  §

For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Carolyn Larsen, Grantor, has granted, sold, and conveyed, and by these presents does grant, sell and convey unto Otis Larsen, married, Grantee, whose address is 918 N. Meyer St., Sealy Texas 77474, the real property located in Austin County, Texas, more particularly described as follows:

[Description of Property]

TO HAVE AND TO HOLD said premises, together with all and singular, all improvements, easements, rights, and appurtenances thereto in anywise belonging, unto the said grantee, his/her heirs, administrators, executors, successors and assigns forever, and the said grantor hereby binds himself/herself, his/her heirs, successors and assigns to warrant and forever defend, all and singular, the said premises unto the said grantee, his/her heirs, administrators, executors, successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof by, through, or under grantor, subject to all matter of record, visible and

14

apparent easements, and applicable laws and zoning ordinances.

Executed and delivered as of the <u>14</u> day of <u>February</u>, 2005.

<u>Signature of Carolyn Larsen</u>
Carolyn Larsen

With these documents as a backdrop, we now turn to Carolyn's arguments on appeal.

## A.     Enforceability of the Reverse Mortgage as to Carolyn

In her first issue, Carolyn argues that (1) "a person who has homestead rights in property in Texas cannot waive his homestead interest" as a matter of law; and (2) she did not waive her homestead rights.  In her second issue, Carolyn argues that the Special Warranty Deed should be set aside as void.  We address these issues together.

### 1.     Homestead rights

#### a.     Waiver

Carolyn's assertion that homestead rights in property cannot be waived at all is plainly an overstatement.  The Texas Constitution provides for strong homestead protections, but it also allows for waiver of homestead rights in certain circumstances.  *See e.g.*, *Williams v. Williams*, 569 S.W.2d 867, 870 (Tex. 1978); *Ferguson v. Ferguson*, 111 S.W.3d 589, 598 (Tex. App.—Fort Worth 2003, pet. denied); *Hunter v. Clark*, 687 S.W.2d 811, 815-17 (Tex. App.—San Antonio 1985, no writ).  *Williams*, *Ferguson*, and *Hunter* involve waivers of homestead protections under article 16, section 52 of the Texas Constitution.  *See Williams*, 569 S.W.2d at 870 (spouse's premarital agreement to waive her probate homestead rights under article 16, section 52 constituted a valid waiver of her probate

15

homestead rights); *Ferguson*, 111 S.W.3d at 598 (generally discussing circumstances under which a spouse can waive probate homestead rights under article 16, section 52); *Hunter*, 687 S.W.2d at 815-17 (acknowledging that a spouse may waive her probate homestead rights under article 16, section 52 by premarital agreement, but holding that "the premarital agreement in question is not a waiver of the surviving spouse's homestead rights").

The present case falls under article 16, section 50 of the Texas Constitution governing reverse mortgages. *See* Tex. Const. art. XVI, § 50(a)(7), (k)-(p). Section 50(k)(1) allows for the creation of a lien on homestead property for reverse mortgage purposes "with the consent of each owner and each owner's spouse." *See id*. § 50(k)(1). Section 50(k)(2) allows a reverse mortgage to be obtained by "a person who is or whose spouse is 62 years or older." *See id*. § 50(k)(2). Section (k)(3) provides that a reverse mortgage must be "made without recourse for personal liability against each owner and the spouse of each owner." *See id*. § 50(k)(3).

In support of her arguments, Carolyn cites several cases that pre-date the 1998 amendments to the Texas Constitution allowing reverse mortgages and accompanying liens. The cited authorities are inapplicable in this case because they do not address homestead rights or waiver of homestead rights in the context of a reverse mortgage. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987); *Gulf Prod. Co. v. Cont'l Oil Co.*, 139 Tex. 183, 132 S.W.2d 553 (1939), *superseded by*, 139 Tex. 183, 164 S.W.2d 488 (1942); *Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929); *Tex. Land & Loan Co. v. Blalock*, 76 Tex. 85, 13 S.W. 12 (1890). Carolyn misplaces her reliance on *In re Niland*, 825 F.2d 801 (5th Cir. 2010), for the same reason.

Carolyn does not explain why the Waiver of Homestead Rights and the Non-

Borrower Spouse Ownership Interest Certification she signed are inadequate to establish her consent under section 50(k)(1). Under these circumstances, Carolyn's consent is established and we reject Carolyn's argument regarding waiver of homestead rights.

### b.      Special Warranty Deed

With regard to Carolyn's contention that the Special Warranty Deed is void, she argues that fact issues exist "as to the intent surrounding the execution" of the Special Warranty Deed and whether she "intended to convey her interest in the Home absolutely." Carolyn contends that the deed was "executed and delivered only as a sham designed to assist Otis Larsen and Carolyn Larsen in obtaining a loan in which Otis Larsen was the sole borrower so that the Loan could qualify as a [Home Equity Conversion Mortgage]."

Carolyn further contends that, "[i]f the lender knows or has reason to believe that a purported sale has been simulated for the purpose of fixing a lien on a homestead, the sale and the lien are void." She contends that "[f]acts which may impute knowledge to the lender include a loan actually being made in conjunction with the transfer; the homeowner's continuous maintenance of his residence in the homestead after the transaction is completed; and no consideration passing as a result of the transaction." According to Carolyn, "[t]here was evidence presented by Carolyn Larsen that all of these conditions existed," and that, "[i]n this case, there was ample evidence presented that indicated the [Special Warranty] Deed was made solely for the purpose of stripping Carolyn Larsen of her homestead rights so that the Loan could be made."

Carolyn points to the following excerpt from her temporary injunction hearing testimony:

[CAROLYN'S TRIAL COUNSEL:] Now, did you sign — did you sign a deed conveying your husband the interest in the property?

[CAROLYN:] Yes.

[CAROLYN'S TRIAL COUNSEL:] And was it your intent actually to convey him that interest?

[CAROLYN:] Yes.

[CAROLYN'S TRIAL COUNSEL:] For the purpose of what?

[CAROLYN:] For the purpose of getting the loan with the understanding that when I turned 62, I would be put back on the deed.

[CAROLYN'S TRIAL COUNSEL:] But did you really believe you were giving up your interest in the house?

[CAROLYN:] No, no.

Carolyn also points to her affidavit. The only reference Carolyn made in her affidavit regarding her intent to convey her interest in the home to Otis is the following statement:

> Otis Larsen and I applied for a loan from Financial Freedom Senior Funding Corporation in late 2004 or early 2005. There was a mortgage broker that we applied through, whose name was Avery Oliver. Avery Oliver told me and Otis Larsen that it was necessary that I sign a deed which purportedly conveyed all of my interest in the Home to Otis Larsen as a condition of obtaining the loan. I signed the deed. A true and correct copy of this deed is attached hereto as EXHIBIT "C" and made a part hereof for all intents and purposes. I never intended to convey my interest in the Home to Otis Larsen, since I did not receive any money for my interest in the Home."

It is questionable whether this evidence raises a fact question as to the intent surrounding the execution of the Special Warranty Deed. But even if we assume it does, Carolyn neither cites nor identifies any evidence in the record to support her accompanying assertion that OneWest knew or had reason to believe the conveyance to Otis was a sham or pretended sale "that has been simulated for the purpose of fixing a lien on a homestead." According to Carolyn, OneWest's knowledge invalidates the conveyance and the lien on the homestead. Even if

18

Carolyn is given the benefit of the doubt, and this assertion is assumed to be correct as a legal matter, this legal statement nonetheless fails to defeat OneWest's motion due to lack of any supporting evidence to raise a genuine issue of material fact that OneWest knew or had reason to know of the asserted sham nature of the transaction.

Based on the arguments Carolyn made on appeal and the lack of evidence, she cannot prevail on her assertion that the Special Warranty Deed is void in this case and "should be set aside." *See Cottledge v. Roberson*, No. 05-12-00720-CV, 2013 WL 1456653, at *1 (Tex. App.—Dallas Apr. 9, 2013, no pet.) (mem. op.) (Appellant has the burden of directing the court to the evidence in the record which supports her contentions; it is not the court's duty to make an independent search of the summary judgment record for evidence supporting appellant's contentions), *Hope's Fin. Mgmt. v. Chase Manhattan Mortg. Corp.*, 172 S.W.3d 105, 107-08 (Tex. App.—Dallas 2005, pet. denied) (same).

We overrule Carolyn's first and second issues.

### 2. Carolyn is not a borrower under the reverse mortgage

In her third issue, Carolyn contends that she "presented some evidence to support a finding that the debt resulting in the lien against the homestead does not come due until" she and Otis both die. In her fourth issue, Carolyn contends that she "presented some evidence to support a finding" that she "was a 'borrower' under the reverse mortgage loan and, as a result, any indebtedness resulting in the reverse mortgage loan does not come due" until she dies.

OneWest argued in the trial court that it is "entitled to summary judgment on [Carolyn]'s claim that she is a 'borrower.'" OneWest argued that, even though Carolyn is referred to once as "borrower" in the Deed of Trust along with Otis,

19

only Otis is named as the borrower in the Note and in the Loan Agreement. OneWest argued that Carolyn is not a borrower as a matter of law when all of the transaction documents are read together as required by contract construction rules; OneWest also pointed to the Non-Borrower Spouse Ownership Interest Certification and the Waiver of Homestead Rights signed by Carolyn. Additionally, OneWest argued that Otis is listed as the sole borrower in the Note and, under Texas law, the terms in a note prevail over the terms in a deed of trust.

Carolyn argued in the trial court that she is a borrower because the Deed of Trust lists her as a borrower and thereby complies with federal law applicable to Home Equity Conversion Mortgages. According to Carolyn, OneWest's reliance on the contract construction rule to read all documents executed at the same time together is misplaced because "the rule is not applicable when one provision is in violation of the law and the conflicting provision is in compliance with the law." Carolyn argued that the terms of the Deed of Trust should prevail over the terms of the Note in this case because the Deed of Trust complies with federal law because it lists Carolyn as a borrower and the Note does not comply with federal law because it fails to list Carolyn as a borrower.

On appeal, Carolyn makes three specific arguments to support her status as a borrower under the reverse mortgage. We address each argument in turn.

### 1.     Consent

According to Carolyn, "the terms of the Deed of Trust must prevail to fulfill the mandate of the Texas Constitution regarding reverse mortgages" requiring that "a reverse mortgage must be created by a written agreement with the consent of each owner and each owner's spouse." Carolyn also argues that, "[i]n the very least, there may be a fact question of what is 'consent' with respect to the transaction that is the subject of the case."

Carolyn raises this "consent" argument for the first time on appeal. Arguments that Carolyn did not expressly present to the trial court by written answer or response to OneWest's summary judgment motion cannot be considered as grounds for reversal on appeal. *See* Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979); *F & F Ranch v. Occidental Chem. Corp.*, 14-09-00901-CV, 2011 WL 1123402, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2011, no pet.) (mem. op.); *Argovitz v. Argovitz*, Nos. 14-07-00206-CV & 14-07-00396-CV, 2008 WL 5131843, at *8 (Tex. App.—Houston [14th Dist.] Dec. 9, 2008, pet. denied) (mem. op.).

### 2. Void Special Warranty Deed

Carolyn also argues that "[t]here was evidence presented in the response to OneWest's motion for summary judgment which supports a finding that the [Special Warranty] Deed is void." Carolyn argues: [I]f the [Special Warranty] Deed is void, Carolyn Larsen should be considered as a 'Borrower' if the transaction is not wholly void, since Carolyn Larsen was an owner of the Home serving as collateral under the Deed of Trust." Because we already have concluded in issue two that Carolyn cannot prevail on her contention that the Special Warranty Deed is void, she cannot prevail on her argument that she is a borrower in this case because the Special Warranty Deed is void.

### 3. Deed of Trust terms are lawful

Carolyn argues that she is a borrower under the reverse mortgage because the Deed of Trust complies with 12 U.S.C. § 1715z-20, "which is the federal statute enabling the insuring of [Home Equity Conversion Mortgage] loans by the FHA." Carolyn acknowledges OneWest's argument that the "Note and Deed of Trust must be construed together, as a contract, to determine what the terms are" and acknowledges that "[t]his may ordinarily be the rule." Carolyn, nonetheless,

21

argues that this rule is inapplicable because this case involves a reverse mortgage. She argues that, "[i]n construing the terms of the Deed of Trust, the construction that when the provision in the Deed of trust is lawful and the provision in the Note is one that does not follow the law, the terms of the Deed of Trust which follow the law should be determinative."

Carolyn contends that the terms of the Deed of Trust should prevail over the terms of the Note because the Deed of Trust complies with 12 U.S.C. § 1715z-20(j) by listing Carolyn as a borrower and allowing foreclosure only after all borrowers die; according to Carolyn, the Note does not comply with federal law because it does not list Carolyn as a borrower. Carolyn contends that subsection (j) provides that "an [Home Equity Conversion Mortgage] loan shall not become due until the homeowner's death, and 'homeowner' includes the spouse of any homeowner." Carolyn also argues that OneWest admitted Otis was the homeowner and therefore, under subsection (j), a foreclosure of the home cannot take place until Otis and Carolyn both die. Carolyn claims that "[t]his interpretation of 12 U.S.C. § 1715z-20(j) was upheld" in *Bennett v. Donovan*, 703 F.3d 582 (D.C. Cir. 2013).

Neither 12 U.S.C. § 1715z-20(j) nor *Bennett v. Donovan* supports Carolyn's argument on appeal.

First, 12 U.S.C. § 1715z-20, entitled "Insurance of home equity conversion mortgages for elderly homeowners," is the "federal statute enabling the insuring of [Home Equity Conversion Mortgage] loans." *See* 12 U.S.C. § 1715z-20(a)-(r) (2013). Nothing in section 1715z-20 speaks to when a lender may foreclose on a home; rather, this section states in subsection (a) that its purpose is to authorize the Secretary of the Department of Housing and Urban Development to carry out a program of mortgage insurance designed

22

(1) to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets; and

(2) to encourage and increase the involvement of mortgagees and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners.

*See id*. § 1715z-20(a). Section 1715z-20(d) also sets out numerous requirements that must be fulfilled for a mortgage "to be eligible for insurance under this section." *See id*. § 1715z-20(d). Further, subsection (j), entitled "Safeguard to prevent displacement of homeowner," states that the "Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner." *See id*. § 1715z-20(j).

Because subsection (j) focuses only on insurance, Carolyn misplaces her reliance upon it. Nor does subsection (j) support her contention that foreclosure cannot take place in this case until Otis and Carolyn both die. *See id*. In short, section 1715z-20 sets out provisions for the administration of a mortgage insurance program by the Secretary of the Department of Housing and Urban Development for home equity conversion mortgages for elderly homeowners; nothing in section 1715z-20 speaks to when a lender is allowed to foreclose. *See id*. § 1715z-20(a)-(r); *see also Bennett*, 703 F.3d at 585-90.

Carolyn also misplaces her reliance on *Bennett v. Donovan*. In *Bennett*, two widowed spouses of homeowners with reverse mortgage contracts faced

foreclosure by mortgage lenders after their spouses died. 703 F.3d at 584. The surviving spouses were not listed on the mortgage documents; when their spouses died, the lenders sought immediate repayment of the loan. *Id*. at 585-86. The lenders claimed that the surviving spouses were not borrowers under the mortgage; further, the lenders claimed they could foreclose under 24 C.F.R § 206.27(c)(1), a HUD regulation promulgated to implement the administration of the mortgage insurance program under 12 U.S.C. § 1715z-20. *See id*. The HUD regulation provided that insured loans would become "due and payable in full if a mortgagor dies." *Id*. at 585. The surviving spouses sued the Secretary of the Department of Housing and Urban Development, alleging that HUD's promulgated regulation in 24 C.F.R § 206.27(c)(1) was unlawful "because insuring loans payable on the death of the last surviving *borrower* was inconsistent with 12 U.S.C. § 1715z–20(j), which protects 'homeowners' from displacement and defines 'homeowner' to include 'spouse of the homeowner.'" *Id*. at 586 (emphasis in original).

The district court dismissed the surviving spouses' case for lack of standing. *Id*. at 584, 586. The appellate court reversed, holding that the surviving spouses alleged a redressable injury. *Id*. at 587-90. Although the court of appeals stated that the HUD regulation "seems contrary to the governing statute," the court neither addressed nor negated the lenders' right to foreclose on the surviving spouses' homes. *Id*. at 586-90. Because the court in *Bennett* made no pronouncements regarding the lenders' right to foreclose on the surviving spouses' homes, *Bennett* does not support Carolyn's contention that 12 U.S.C. § 1715z-20(j) prevents foreclosure until Otis and Carolyn both die. *See id*. at 585-90.

Because there is no requirement that any reverse mortgage documents in this case must comply with any provision in 12 U.S.C. § 1715z-20 before a lender may foreclose, Carolyn has no support for her argument that the terms of the Deed of

Trust should prevail over the terms of the Note. Caselaw is to the contrary, holding that, "where there is conflict between the terms of the note and the language of the security instrument, whether deed of trust or mortgage, the latter must yield." *See Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 715 (Tex. App.—Corpus Christi 1998, pet. denied) (citing *Odell v. Commerce Farm Credit Co.*, 80 S.W.2d 295, 297 (Tex. 1935)); *see also In re Tucker*, 391 B.R. 404, 409 (Bankr. S.D. Tex. 2008) ("If there are conflicting terms within a note or within a deed of trust, the first-stated term prevails."). Carolyn does not explain why this caselaw does not apply in this case.

In any event, Carolyn fails to challenge on appeal each of the grounds under which summary judgment could have been granted in OneWest's favor. Carolyn does not present any argument that summary judgment was improperly granted because there is at least a fact issue with regard to whether she is a borrower under the reverse mortgage even after construing all the reverse mortgage documents together under the rules of contract construction as OneWest argued in the trial court and on appeal. Carolyn also fails to challenge on appeal the ground for summary judgment premised on the argument OneWest made in its motion and on appeal that Carolyn is not a borrower because the Note provides that Otis is the sole borrower and "well-established Texas law . . . holds that the terms in a Note prevail over the terms in a Deed of Trust." We must affirm a trial court's judgment if a ground for summary judgment is not challenged on appeal. *Fairchild*, 2009 WL 276717, at *4, 6; *Ellis*, 68 S.W.3d at 898.

We overrule Carolyn's third and fourth issues.[2]

---

[2] In light of our resolution of Carolyn's first, second, third, and fourth issues, we need not address her arguments in issues five and six that summary judgment was improperly granted on statute of limitations grounds. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("we must affirm the summary judgment if any of the theories presented to the trial court and preserved

## CONCLUSION

We affirm the trial court's summary judgment.

/s/    William J. Boyce
          Justice

Panel consists of Justices Boyce, McCally and Donovan.

for appellate review are meritorious").